Parker, C. J.
This case comes before us as the Supreme Court of Probate, on an appeal from a decree of the Judge of Probate for the county of Suffolk, by which the appellant, who had been appointed one of the executors of Edward Tyler, was removed and discharged from that trust.
*177 The cause for the removal, as set forth in the decree, is, that the appellant, at the time of making and proving of the last will of the testator, and of the passing of the decree, was indebted to the estate of the testator in a large sum of money, which he refused to consider as assets, on the ground that he was discharged therefrom, and the debt extinguished, by his appointment to the office of executor ; although there were residuary legatees named in the will, other than the executors.
The Judge of Probate having determined that the said debt was assets in the hands of the executor, to pay debts and legacies ; and also for distribution to the next of kin, if not disposed of in the will, further determined, that, as the appellant intended to contest his liability in law, he was an unsuitable person to remain executor ; and, under the authority of the statute of 1783, c. 24, § 10, removed him from that trust.
* It has been objected, in the first place, on behalf of [*200] the appellant,, that, admitting the decision of the judge to be correct, as to the liability of the appellant to pay the debt, yet the power of the judge was not properly exercised ; as the fact of his being a debtor did not render him unsuitable, within the meaning of the statute, to execute the trust reposed in him by the testator ; he having given bond for the faithful execution of his trust, and being liable upon that bond.
The words of the statute, relied on as giving the authority under which the judge decreed, are, “ When any executor or administrator shall become insane, or otherwise incapable of, or evidently unsuitable to discharge, the trust reposed in him, the judges of probate are em powered to grant letters of administration,” &c. Although the statute seems predicated on the case of one executor only, yet it is within its reason and equity, that, if one of two or more executors should fall within the disabilities specified, the remedy should be applied, although letters of administration may not, in such case, be necessary.
We think, also, that the principle adopted by the judge of probate, that the executor remained liable for the debt due to his testator, notwithstanding the trust committed to him, was correct; and that a determination to resist payment of such debt, until compelled by a judgment of court, may, in some cases, be deemed a sufficient cause for removing such executor ; it being unsuitable, that he who represents the estate, and without whose agency a suit cannot be conducted, should remain in office, when such suit may be necessary to coerce the payment of the debt. But it may not always be necessary to take this step. For, as the executor has given bond for the faithful execution of his trust, and, as he must be supposed actually to have received, for the purposes of his trust, a debt due from himself, *178 SO that he and his sureties will be responsible on their bond for such debt, the interest of the estate may require that such se[*201 ] curity should be preserved by continuing the executor in * office ; rather than those entitled under the will should be deprived thereof, by discharging the trust, and, of course, cancelling the bond.
The statute gives a very broad discretion to the judge, evidently intending not to define or limit the disabilities which should be the causes of removal; but to leave room for the application of the power to all cases which may occur to render the execution of a will, or the administration of an estate, perplexed or difficult.
If it be said that the testator reposed confidence in his executor, notwithstanding he must be presumed to know that he was indebted to him; the answer is, that he would presume that a man, in whom he so confided, would not refuse to account for a debt which admitted of no fair dispute ; and, therefore, would not, merely on account of his being his debtor, decline appointing him his executor ; especially as he is also presumed to know that there was power in the judge of probate to remove him, if the interest of the estate should require it.
There does not appear to have been any definite decision in this State upon the question, whether the appointment of a debtor executor of a will is a discharge of the debt. It may be proper, therefore, to enter rather more at large into the discussion, than seems to be necessary merely to settle the point; which may be done sufficiently, we think, by our own statute.
The authorities cited by the counsel for the appellant seem to leave no doubt, that formerly, by the common law of England, when a debtor was made executor, the debt was discharged or released,(1) unless a different intent of the testator could be inferred from the will itself. The reason given in some of the authorities is, that the same person is to pay and receive ; and, as the executor cannot maintain an action against himself, the debt shall be considered as paid.
But, to avoid the manifest injury to creditors, by permitting a testator thus to take from the common fund the means [* 202] *of satisfying his debts ; the same law held that the debt, thus considered to be paid, should be assets to pay the testator’s debts, and that the executor should be held to account for and pay over the same.
This liability, however, did not exist in favor of legacies, or of the residuary legatee, or of the next of kin ; unless, by some provision in the will itself, it should appear that the testator manifestly intended that the executor should not be discharged ; as, when the testator *179 bequeaths the very debt, or forgives a part of it to the executor, in compensation for the trouble he has undertaken.
It was also a principle of the common law of England, that all the undevised personal estate of the testator went to the executor as his own property, when no residuary legatee was appointed ; unless there were some devise or bequest to the executor, from which an inference could be drawn against the testator’s intention so to dispose of it. The same law applied to administrators, after paying debts, legacies, and funeral charges, until the statute of 22 & 23 Car. 2, c. 10, made perpetual by the statute of 1 Jac. 2, c. 17, which directed distribution to be made of the residue to the next of kin ; leaving the right still in an executor to retain to his own use all the goods of the testator, remaining after paying debts, legacies, and funeral charges.
This principle, however, has become obsolete, in consequence of the application of rules and principles of equity in the courts of chancery, where it has been frequently decided,(2) that, unless a necessary implication or violent presumption appears that the testator, by naming an executor, meant to give not only the office of the executor, but some beneficial interest or property, he shall be considered as a trustee only, holding a resulting trust for the next of kin to the testator.
We apprehend that the law has been always, or for a long time, settled in this country according to these principles ; and that this was, in fact, the law brought hither by our ancestors.
* Executors and administrators are upon the same foot- [* 203] . ing, both being trustees for the legatees or next of kin ; unless, in the case of an executor, it should manifestly appear from the will itself that the testator intended him a benefit. As early as 1703, an act of the provincial legislature passed, in effect abolishing all distinction between an executor and an administrator, as to their interest in the estate of the deceased. By the act of 1 & 2 Ann. c. 5, § 1, it is provided, that, in wills, where, after payment of debts, and of any certain particular legacy or legacies, the residue or remainder of the estate is bequeathed generally to any one or more persons, other than the executors themselves ; in every such case an inventory of the estate shall be presented upon oath, and no bond be accepted in lieu thereof; and the executors shall be liable to account as administrators are, by law, obliged to do ; and a right of action is given to any residuary legatee against the executors.
From the time of the passing of this act, whatever may have been the law of the country before, we apprehend that no debtor, appointed an executor, was, by such appointment, discharged of his *180 debt, when there was a residuary legatee named in the will, and no notice taken of his debt. For, by that statute, he was to account in such case, as an administrator would be holden to account; and there is no pretence that a debtor, by taking out letters of administration upon his deceased creditor’s estate, can discharge himself of his debt. The remedy at law against him may be suspended during his administration, but will revive after it ceases ; and, indeed, he may be charged upon his administration bond, as having received the amount of his debt. For, having voluntarily assumed the trust, which prevents any other from receiving, and being unable to sue himself, he shall be considered as having paid the debt, and as holding the amount in his hands as administrator.(3) The statute of the Commonwealth [1783, c. 24] reenacts, substantially, the provisions of the provincial act before cited ; but the tenth section [*204] contains a still more explicit * declaration of the intention of the legislature to exclude the executor from all beneficial interest in the estate, unless he is particularly provided for in the will. The words of that section are, “ that all estate, real or personal, that is not devised or bequeathed in the last will and testament of any persons hereafter to be proved, shall be distributed in the same manner as if it were an intestate estate ; and the executor or administrator shall administer the same as such.” The legislature must undoubtedly here intend that an express devise or bequest was necessary to prevent the operation of this statute ; for their object was, to provide for a distribution among the kindred, of what the testator had not himself distributed, without intending to favor the claims of an executor, resting only on the operation of law upon the will, which might frequently militate with the views of the testator, who is not presumed to know or to calculate upon the nice legal distinctions which might frustrate his real intentions.
A construction of this statute, unfavorable to the appellant’s claim, appears to have been given by the Court, in the case of Heys & al., Ex'rs., vs. Jackson & al.(4) Chief Justice Parsons, who delivered the opinion of the Court, after speaking of the rights of the executor, by the rules of law, over undevised personal estate, where no provision was expressly made in the will of the testator, says, “ As questions frequently arose, whether the executor was excluded from the residue or not, the section of the statute above cited removed all doubt, and the executor is now, in all cases, trustee of the undisposed residue for the next of kin.” Where there is no residuary bequest, therefore, the executor has no interest ; and where there is, the whole residue devolves upon the residuary legatee. Thus the executor is reduced to a mere trustee for those who ap *181 pear to be the objects of the testator’s bounty; and, in case he designates none such, for those whom the law presumes he meant to provide for, his kindred according to their degree of consanguinity.
* It might easily be shown that this provision of the [ * 205 ] law is more conformable generally to the will of a testator, than the appropriation of his effects under the old English common law. If a testator intended to extinguish the debt of his executor, it would be simple, natural, and easy, to express that intent in clear and positive terms ; and, in most cases, it would be so done, instead of leaving it to be inferred from abstruse principles, with which testators in general are unacquainted.
In the present case, two executors were appointed, neither of whom appears to have any claim by kindred upon the testator’s bounty. What reason can be given, why he should have given one a debt of two or three thousand dollars, and nothing to the other ? He appears to have had equal confidence in both, and he makes no provision for either ; trusting, undoubtedly, that, from motives of friendship, for the compensation allowed by law, they would accept the trust, and knowing that either or both of them had the right to decline. It cannot be supposed that he thought so considerable a debt would be discharged by his making his debtor his executor. He has also carefully enumerated his collateral kindred, who, he intended, should have his estate after payment of his debts and legacies ; and he makes no exception of the debt due from the appellant, which he would naturally have done, if he intended so to diminish his estate. Upon the whole, we see no reason, either in law or equity, to consider the appellant as discharged from his debt to the testator.
Since, however, the appellant has given bond, with which those concerned in interest are satisfied, and this debt must be considered as received by the appellant, and so his sureties accountable ; it is not necessary that he should be removed. By consent, therefore, the decree of the Judge of Probate is reversed, and the cause remitted to him for further proceeding therein according to law.†

 Roll. Abr. 920, §§ 12, 13.— Godolphin’s Orphan's Legacy, 113. — Sir J. Needham’s case, 8 Co. 136. — 1 Salk. 300. — Wankford vs. Wankford, Yelv. 160.

 1 Ch. Ca. 292. — Cases Temp Talbot, 240. — 4 Bro. Parl. Cases, 179. — 3 Bro Ch. Ca. 110. — Yelv. 160. — 3 Rep. in Ch. 89. — 1 Rep. in Ch. 138. — Ambler, 769. — 3 Bro. Ch. Ca. 28.

 Stevens vs. Gaylord, 11 Mass. Rep. 256.

 6 Mass. Rep. 150.

 Hayes et al. vs. Jackson, et al, 6 Mass. Rep. 149. — Stevens vs. Gaylord, 11 Mass. Rep. 256. — Bigelow vs. Bigelow, 4 Ohio Rep. 138. — Freakly vs. Fox, 9 B. & Cr. 130. — Wankford vs. Wankford, Salk. 299. — Cheetham vs. Wood, 1 B. & P. 630. — Wood vs Johnson, Cox R. N. J. 153.