## BACON *against* FAIRMAN and another.

|  |  |
|---|---|
| 6 | 121 |
| 69 | 78 |
| 70 | 375 |

The appointment, by a testator, of his debtor, to execute his will, is not an extinguishment of the debt.

Where an executor, who owed a debt secured by mortgage to the estate of his testator, paid certain sums of money to a creditor of the testator by note, without the request of any one interested in the estate, and not in pursuance of any agreement that the money so paid should be applied on his mortgage debt; and a bill of foreclosure being brought against such executor, before he had settled his account at the probate office; the court decreed a foreclosure, without allowing any deduction from the mortgage debt, on account of such payment.

This was a bill for a foreclosure, brought by *Orphia Bacon,* surviving executrix of the will of her late husband, *Garry Ba-*

*Litchfield,*
*June,*
*1826.*

Bacon
*v.*
Fairman.

*con,* deceased, against *James B. Fairman,* executor of *Timothy Shepard,* deceased, and *Moss K. Botsford,* a purchaser of the equity of redemption.

On the 14th of *February,* 1816, *Shepard,* being indebted to *Bacon,* in the sum of 1540 dollars, gave his note for that sum, and secured it by mortgage. On the 9th of *May,* 1820, *Bacon* made his will, disposing of his estate to his wife and children, and making *David Tomlinson, Shepard* and the present plaintiff, his executors; and shortly afterwards died. *Shepard* accepted the trust, and acted in that capacity until his death. During this period, *viz.* on the 3rd of *September,* 1821, and the 30th *January,* 1822, he paid to *Daniel Beers* the several sums of 400 dollars, and 246 dollars, 16 cents, on a note given by *Bacon* to *Beers,* which it was the duty of *Bacon* to pay. But it did not appear, that these payments were made at the request of *Bacon,* or of the plaintiff, or of any other person authorized to make request; nor that they were made upon any agreement of *Bacon,* or of the plaintiff, or of any other person duly authorized, that they should be applied in part payment of the mortgage debt; nor that *Shepard,* or his representative, had settled his account as executor, at the court of probate. After *Shepard's* death, *Fairman* was appointed administrator on his estate, (which was insolvent) and, in pursuance of an order of the court of probate, disposed of the equity of redemption in the mortgaged premises, to *Botsford.*

A case, of which these are the material facts, was reserved for the advice of this Court.

*Benedict* and *C. Chapman,* for the plaintiff, contended, 1. That the debt against *Shepard* was not extinguished, by the mere fact of his being the executor of *Bacon's* will. The rule of the *English* common law on this subject, is the consequence of another rule, *viz.* that the executor is entitled to the undevised surplus of the personal estate, after payment of the debts and legacies. 2 *Bla. Com.* 512. *Woodward* v. Lord *Darcy,* 1 *Plowd.* 184. *Wankford* v. *Wankford,* 1 *Salk.* 299. This rule, too, has many exceptions and limitations. It is no extinguishment of the debt, if the executor have a competent legacy given him in the will for his trouble and expense in settling the estate; nor where, by the terms of the will, or by fair inference arising out of the construction of the will, it is apparent the testator *intended* otherwise. *Toller's L. Exec.* 350. The extinguishment

obviously is not wrought by way of *actual release*, for in that case the claim would not be assets for the payment of the debts; nor is it considered as *payment*, for none is made; nor is it because the legal remedy is gone, the executor not being able to sue himself, for the money is supposed to be already in his hands, liable to be accounted for to those entitled to it, the duty to account still remaining.

But in this state, the executor is not entitled to the surplus. He is always compensated for his trouble and expense in settling the estate. He is bound, like an administrator, to inventory the *choses in action,* and to cause distribution to be made according to the will. He takes no beneficial interest under the will, and is a good attesting witness. *Hawley* v. *Brown,* 1 *Root* 494. The reasons, therefore, on which the rule of the *English* law is supposed to be founded, do not exist here; and the rule itself has never been recognized by our courts. 1 *Swift's Dig.* 449. The uniform practice of our courts of probate, from the earliest period of our testamentary law, has been to treat debts due from executors in the same manner as other debts. [Here the counsel referred to several letters from judges of probate in different parts of the state.] The point has also been decided, by the superior court, in *New-London* county. *Griswold* v. *Samuel Hillhouse.* (*a*) The *English* rule has been exploded, also, in *Massachusetts. Stevens* v. *Gaylord,* 11 *Mass. Rep.* 256. 266. & seq. *Winship* v. *Bass* & al. 12 *Mass. Rep.* 199. In *Pennsylvania,* it has been decided, that the executor is not entitled to the undisposed surplus of the personal estate, for his own benefit, unless it appears to have been *the intention of the testator* that he should have it. *Grasser* & ux. v. *Eckhart* & ux. 1 *Binn.* 575. *Wilson* v. *Wilson,* 3 *Binn.* 557. In the state of *New-York,* the *English* rule is reluctantly adhered to. *Thomas* v. *Thompson,* 2 *Johns. Rep.* 471.

(*a*) The following MS. note of this case, was read.

*Matthew Griswold,* Esq. judge of probate for the district of *New-London,* v. *Samuel Hillhouse.*

The case was this. *Samuel Hillhouse* was indebted to *William Hillhouse,* the testator, to the amount of 700 dollars, by note. The debtor was appointed executor; and considering this appointment as an extinguishment of the debt, and claiming that, by other evidence, it appeared, that the testator did not mean to claim the debt, he did not inventory the note, and refused to pay over the amount. The probate bond was sued; and the superior court (Judge *Swift* presiding) decided, that his appointment as executor was no extinguishment of the debt, and gave judgment for the amount of the debt, there being no other claim. This decision was acquiesced in.

*Litchfield,*
June,
1826.

Bacon
*v.*
Fairman.

As the testator, in this case, disposed of *all* his estate, it may well be doubted, whether, even by the *English* law, the debt from *Shepard* would not go with the rest of the estate.

2. That the payments made by *Shepard* to *Beers*, could not be applied in discharge of the mortgage debt to that amount. As executor, he had assets in his hands to pay the debts of the testator; and the presumption is, that he used those assets for that purpose. And even if he paid with his own money, whether any thing is due him, depends on the settlement of his probate account. The court of probate is the only court, that can adjust his accounts. There he will have the full benefit of all he has advanced for the estate. Should this claim be allowed here, he may get, for aught this Court can know, a double allowance.

But, as the testator's property vests in him, it is altogether immaterial what money he takes to pay debts.

This claim must be treated either as *payment* or *set-off*. As payment, it cannot be; because neither *Bacon*, in his life-time, nor the present plaintiff, who owns the note, ever agreed that it should be so considered. As a set-off, it cannot be, because the estate is *solvent*, (such being the presumption, until it is shewn to be insolvent) and the executor has assets in his own hands, to indemnify himself. Besides, the payments being made without request, create no *debt* against the estate; and *mutual debts* alone can be set-off.

*J. W. Huntington,* contra. 1. In *Westminster-Hall,* it is well settled, that *at law,* the appointment of a debtor to the testator, executor, is an extinguishment of the debt; and this, whether the executor is a *sole,* or *a joint and several,* or a *joint* debtor to the testator; or whether he is *sole* executor, or one of *several* executors; or whether he dies without proving the will; or without having administered; or though he refuses to act with his coexecutors, unless he formally renounces in the spiritual court. The reason is, the same person cannot be both plaintiff and defendant; and as the legal remedy is once *suspended,* by the act of the creditor, it is forever extinguished. *Toll. Ex.* 247, 8. *Bac. Abr. tit.* Executors and Administrators. A. 10. *Cheetham* & al. v. *Ward,* 1 *Bos. & Pull.* 630. and note (*a.*) *Thomas* v. *Thompson,* 2 *Johns. Rep.* 471.

*In equity,* as to *creditors,* it is no extinguishment; for it is not in the power of a testator, by his last will, to release debts

due to him, so as not to leave a fund sufficient to pay debts, which are due from him. Equity here applies the maxim, that a man must be just before he is generous. *Toll. Ex.* 348. There is no pretence, that this debt is wanted to pay creditors of the testator. As to *legatees*, the general rule in equity is, that the debt due from the executor is not assets in his hands to pay legacies. The reason is, the appointment of the debtor to be executor, is considered as a specific bequest of the debt, and, like all other legacies to executors, takes preference of other legacies. *Toll. Ex.* 348, 9. *Harg. Co. Litt.* 364. n. 1. 2 *Bla. Com.* 512. *Lovelass* 155. *Flud* v. *Rumcey, Yelv.* 160. n. 1. (*Metcalf's* ed.) 1 *Madd. Chan.* 583, 4.

To this rule there are exceptions, all growing out of a supposed intention, on the part of the testator, to have the debt collected, and all falling under the operation of this general principle, that where it appears from the express terms of the will, or by strong inference from its contents, that the testator did not *intend* to discharge the debt, by the appointment of the debtor to be executor, it shall remain a valid debt against him, notwithstanding such appointment; or, in other words, the equitable presumption, that the testator intended to bequeath the debt, may be rebutted, by a contrary intention, manifested by express words in the will to that effect, or by strong inference from its contents. *Toll. Ex.* 349. *Flud* v. *Rumcey, Yelv.* 160. *Carey* v. *Goodinge*, 3 *Bro. Ch. Rep.* 110. *Nicholls* v. *Crisp. Amb.* 768. *Brown* v. *Selwin, Ca. temp. Talbot* 240. S. C. *in Dom. Proc.* 3 *Bro. Parl. Ca.* 607. (*Toml.* ed.) *Fox* v. *Fox*, 1 *Atk.* 463. *Berry* v. *Usher*, 11 *Ves.* jun. 87.

These propositions being established, this part of the case presents two questions for decision; first, whether it appears from the will of *Bacon*, by express words, or strong inference, that it was the intention of the testator, that the debt due from *Shepard* should be collected; if not, then secondly, whether the principles established by the *English* court of chancery in relation to this subject, as claimed by the defendants, are to be adopted by the courts of equity in this state.

It is not claimed, that there are any *express* words in the will rebutting the presumption that the testator intended to discharge the debt in question. Are there any words affording a strong inference, or any inference, to this effect? The testator has directed no legacy to be paid out of this debt; he has bequeathed no legacy to the executor; he has not directed the

*Litchfield,*
June,
1826.

Bacon
*v.*
Fairman.

residue to be divided between his executors ; it does not appear that his heir or devisee has need of this debt to redeem mortgaged property ; nor has the testator said, in terms, or by implication, that he intended the executor to be a mere trustee.

The doctrines of *Westminster-Hall* on this subject, will of course be recognized by this Court, unless some good reason be shewn why they should be rejected.   It is said, they ought not to be incorporated into our system, first, because it has been the immemorial *practice* of our courts of probate to treat the debts due from an executor like all other debts.   It was the remark of a respectable judge, late a member of this Court, that "the *law* ought to govern the *practice*," and that it was "a perversion of principle, to allow the practice to overturn the law." *Hall* v. *Hall*, 3 *Conn. Rep.* 315.   And one of his predecessors, the memory of whose private worth and judicial talents will long be cherished, by every member of the profession, has said, that "the Supreme Court of Errors was constituted to correct the errors of inferior tribunals ; and that it was a strange argument that the number and uniformity of such errors should transform them into a correct procedure." *The State* v. *Carrier*, 5 *Day* 134.   But I deny that there is, or has been, any such practice.   Is it known to the court ?   Have the records of our courts of probate been searched ?   Do they evince it ?   It is incumbent on those who claim such a practice, to adduce proof of it.   Has this been done?   So far from this, it is apparent from facts, universally known, that such a practice could not have a place in our system.   It is a very uncommon event, in this state, that the children of a testator are *disinherited.*   They, with the wife, if living, are almost always made the objects of his bounty.   They are, also, to nearly the same extent, appointed to execute the will.   But a devise or a legacy given to an executor, avoids the operation of the general rule; and in such case, the debt remains valid.   Where the executor is neither wife nor child, he is ordinarily selected from that class of men, who are in independent circumstances, and who owe the testator nothing.   In relation to these classes, therefore, the question could not arise.

Secondly, it is claimed, that we ought not to adopt the *English* rule, because it is not founded in *principle*, not being conformable generally to the will of the testator.   The question of intention is always one, which, except in obvious cases, admits of different interpretations.   It certainly does not seem any

more unreasonable to believe the testator's intention to be to discharge a debt due from his executor, than the contrary. If it is proper to ask, why if the testator intended to extinguish the debt, he did not say so, in positive terms ; it is equally proper, in reply, to ask, why if he did not intend to extinguish it, did he make his debtor executor ? Did he not know, that by this appointment, he gave his debtor the legal controul of the evidence of the debt ? That he prevented a recovery upon it, by a suit at law? And is not the inference equally fair and legitimate, that he intended to discharge it ?

Thirdly, it is urged, that we should adopt a different rule from the one claimed by the defendants, because some of our sister states have done so ? But *how* have they adopted a different rule ? In every case, by the authority of a *statute* law. In no case cited, has the *court* of any state departed from the *English* rule, except where a statute has authorized it. In *Rhode-Island, Maryland, Virginia, South-Carolina* and *Georgia,* there is a legislative enactment to this effect. *Toll. Ex.* 350. n. 1. (ed. 1824.) In *Massachusetts*, a construction has been given to their statutes, producing the same result. *Hays* & al. v. *Jackson* & al. 6 *Mass. Rep.* 150. per *Parsons*, Ch. J. cited 12 *Mass. Rep.* 204. *Winship* v. *Bass* & al. 12 *Mass. Rep.* 199. 203, 4. See also *Stevens* v. *Gaylord*, 11 *Mass. Rep.* 256. which was the case of an *administrator.* In the two latter cases, an *obiter* opinion of dissatisfaction with the *English* rule, is expressed ; but the cases are not decided with reference to it. In *New-York* the *English* rule has been *adopted.* *Thomas* v. *Thompson*, 2 *Johns. Rep.* 471. In *Pennsylvania* also, it has been substantially adopted. *Grasser* & ux. v. *Eckart* & ux. 1 *Binn. Rep.* 557.

The objections being removed, the reasons why there should be a uniformity in the legal and equitable rules in *England* and in this country, operate, in this case, with full force.

2 That if the plaintiff was entitled to a decree in her favour, the payments made by *Shepard* to *Beers*, ought to be deducted from the mortgage debt. These payments were made to discharge a debt due from the testator; and the executor has a right to set them off on a claim against him in favour of the estate. There was no necessity for any *direction* from the testator, or the plaintiff, to authorize the payment of this money. He had a right to make it, in his capacity of executor; and indeed, it was his duty to do it ; and if he has advanced his own money, he is to be reimbursed. This can be done in the form proposed.

This is a bill in equity; and the court will not pass a decree, without doing justice between the parties.

DAGGETT, J. In this case, two questions are presented for consideration.

1. Ought there to be any deduction from the debt secured, by the mortgage of *Timothy Shepard* to *Garry Bacon*, for which a foreclosure is sought by the plaintiff? The only reason for a deduction, suggested by the defendant, is, it appears that *Shepard*, the mortgagor, paid to *Daniel Beers*, in *September*, 1821, 400 dollars, and in 1822, the further sum of 246 dollars, 16 cents; which sums were due by *Garry Bacon*, at his death, to *Beers*. There was no proof that the testator, *Bacon*, or the plaintiff, ever requested *Shepard* to pay either of those debts; or that there was ever any agreement, that if payment was made, it should be applied to the debt secured by mortgage. It is not averred, that the estate of *Bacon* is insolvent; nor does it appear, that *Shepard*, or his representative, has settled his account as executor at the court of probate. Under these circumstances, it is very clear, that there is no ground for any deduction. *Shepard*, as executor, might have had in his hands assets; and if so, it was his duty to pay the debts of the testator; and, on the facts found, it is to be presumed, that such was the case. But what is conclusive, the court of probate alone can adjust the account of the executor, and, on such adjustment, make to him all just and proper allowances. The superior court cannot, either on the principles of law, or any practice, in this collateral manner, take cognizance of such a claim. It is only on an appeal from the decree of the court of probate, that a higher court can examine and decide a question of this kind.

2. Did *Bacon*, by appointing *Shepard* an executor of his will, release this debt? If the affirmative of this question can be maintained, it is extraordinary that no practice in our courts of probate, nor any principle adopted by our higher courts, can be found in its support.

In *Toller's* treatise on the law of Executors and Administrators, *p.* 347. (*Am.* ed.) the common law on this subject is laid down, and numerous authorities are cited. The appointment, and even nomination, of a debtor, an executor, operates as a release or extinguishment of the debt. In equity, however, such appointment will never operate so as to defeat creditors of their claims; but the executor is accountable for such debt. A con-

*Litchfield,*
June,
1826.

Bacon
*v.*
Fairman.

trary doctrine would be manifestly unreasonable and unjust. In respect to legatees, the appointment of a debtor executor, generally operates a discharge of his debt; for the debt is deemed in the light of a specific legacy, and the executor is considered entitled to retain, in preference to other legatees; yet by the express terms of the will or strong inference, the presumption that the testator so intended, may be rebutted. Indeed, the exceptions to this rule, as it respects legatees, are numerous; and it is only when the testator intended the executor a beneficial interest,—or rather, did not intend that he should act as a mere trustee,—that it is suffered to prevail against either creditors or the next of kin. The rule itself originated in a principle never adopted in this state, *viz.* that the executor was entitled to the surplus of the personal estate, after payment of debts.

In *New-York*, this rule is recognized, though with apparent reluctance. *Thomas* v. *Thompson*, 2 *Johns. Rep.* 471. In *Massachusetts*, it is denied. *Stevens*, admr. v. *Gaylord*, 11 *Mass. Rep.* 256. *Winship* v. *Bass* & al. 12 *Mass. Rep.* 199. And such, it is believed, is the fact, in most of the states in the Union.

But, be the decisions of the courts of other states, or of the courts in *Westminster-Hall*, as they may, what is the law of *Connecticut?* The settlement of testate and intestate estates, and the duties, powers and privileges of executors and administrators, is a fair subject of municipal regulation. It has been so considered from the first settlement of the state. The provisions of the statute are ample and explicit. The executor of a will derives his appointment from the testator; but he acts under the authority of the court of probate, and in obedience to laws made for the regulation of his conduct. To that court he is accountable for all the property of the deceased, to the end that it may be applied, first, in payment of debts, and secondly, to those, who, by the statute, are entitled to it. For his services, he is allowed, by the court of probate, a meet recompense. He is an agent or trustee; and merely such, without any beneficial interest, unless given to him by the will. If the testator intends him an object of his bounty, he must manifest that intention towards him as towards others. If he intends to release a debt due from him, he must so direct; otherwise, he will be considered a debtor. Nor is there any technical difficulty in the way. If the executor will not inventory a debt

due from him to the deceased, and account for it, as part of the property of the deceased, he is liable, on his bond, for a breach of duty. If he denies, that the debt is due, either in whole or in part, that question may be raised and decided on the trial on the bond. I feel no disposition to make any innovations upon a system long established, well understood, and productive of no evil.

In this view of the case, I advise, that a decree of the superior court be made, on the basis that the whole debt due according to the consideration of the mortgage, be paid within such time as to that court may appear reasonable, or that the right of the mortgagor be foreclosed.

The other Judges were of the same opinion.

Decree advised accordingly.