OTIS J. TARBELL, administrator, *vs.* HENRY A. PARKER & wife.

A promissory note and a mortgage made by A. were indorsed and assigned by the mortgagee to a guardian of infants. On the death of this guardian, A. was appointed his executor and also became guardian in his stead. On A.'s death, his widow was appointed his administratrix, and B. succeeded him as guardian. A.'s widow delivered the note to B., who returned it to her, claiming that it was paid, and she proceeded to contract for the sale of the lands included in the mortgage. B. brought suit on A.'s bond as guardian, and obtained judgment for the whole amount due, not deducting the mortgage and note as part of the wards' estate. The sureties on the bond paid the judgment, and C., who had succeeded A.'s widow in the administration of A.'s estate, assigned to them this note and mortgage. *Held*, that the note and mortgage must be taken to be discharged, and therefore that C. had no authority to transfer them to the sureties.

WRIT OF ENTRY to foreclose a mortgage, brought originally by Luther Tarbell, and prosecuted after his death by his administrator. At the trial in the superior court, *Lord*, J., ruled that the demandant was not entitled to recover, directed a verdict for the tenants, and reported the case, which is stated in the opinion.

*T. Wentworth*, for the demandant.

*F. A. Worcester*, (*T. H. Sweetser* with him,) for the tenants.

HOAR, J. The ruling of the justice of the superior court who presided at the trial of this case, that the demandant had no title to recover, appears to us to have been very clearly correct, and the verdict for the tenants must stand. The facts reported are very complicated, and the numerous objections to the maintenance of the action which they present constitute no small part of the complication.

The suit is to foreclose a mortgage, which, with a note for $700 which it was given to secure, was made by Samuel A. Jewett to Asa F. Lawrence in June 1845. Lawrence assigned the mortgage and indorsed the note to Abel Jewett, guardian of Henry A., Charles F. and Harriet E. Parker, minors, in July 1846. Abel Jewett died in 1854; and Samuel Parker, who was appointed his administrator *de bonis non* October 27, 1863, assigned the mortgage and indorsed the note to Luther Tarbell, the original demandant in this action. This shows a regular and formal title in the demandant. The defence is, that the

note has been paid or extinguished by operation of law, so that no judgment can be rendered upon the mortgage; and we have only to see if the facts establish this defence.

In the first place, upon the death of Abel Jewett, in 1854 Samuel A. Jewett was appointed and qualified as one of his executors. If the note were held by Abel Jewett as indorsee, this would constitute in law *primâ facie* a discharge of the note, Samuel A. Jewett becoming responsible for it in his capacity as executor, and being bound to charge himself with it in his executor's account. But it appeared that he did not include the note in the inventory of Abel Jewett's estate; that Abel Jewett had kept the note and mortgage with the securities belonging to his wards, and that it was treated as their property. If the note were indorsed in blank by Lawrence, the payee, it might perhaps well enough have been regarded, under these circumstances, not only equitably, but legally, as the property of the wards, and the mortgage considered as held in trust by their guardian.

In the same year, Samuel A. Jewett was appointed guardian of Charles F. and Harriet E. Parker, and received the assets of the wards, among which were this note and mortgage; Abel Jewett having settled with Henry A. Parker before his death. If the note were then treated as the property of the wards, passing to them directly by the indorsement of Lawrence, the fact that it was the note of their guardian would not impair its obligation, because the estate of the ward does not vest in the guardian. But it might become his duty to pay it; and in a final settlement with the ward, or with a subsequent guardian, he might not be allowed to transfer it as a part of the estate of the ward; and he and his sureties would then be held responsible for it in his capacity as guardian. But if it were delivered to and accepted by the ward after he became of age, or by a subsequent guardian, as a valid and subsisting security, there would not be any legal objection, that we can perceive, to treating it as the note of the guardian in full force and effect.

But on the other hand, the guardian, who was the promisor of the note, having it in his hands as a part of the ward's es-

tate, with the duty of collecting it whenever he should think it for the ward's interest to do so, might at any time extinguish and discharge it, and thereby make himself liable as guardian for the amount. He could pay the note to himself as guardian, and cancel or destroy the note. It would be only by treating it as a security belonging to the ward's estate that its validity as a promissory note in the hands of the promisor or his representatives could be continued and preserved.

The settlement by Samuel A. Jewett with his ward Charles F. Parker, in December 1857, and giving him his note for $800, for the balance due from his guardian, would not show that the mortgage note was regarded as paid or extinguished, because he continued the guardian of Harriet E. Parker, and there was evidence that this note was kept among her securities.

Thus the matter stood at the death of Samuel A. Jewett in December 1858, and the appointment of his widow, Abby V. Jewett, as his administratrix, in March 1859. She did not, of course, include the note and mortgage in the inventory of her husband's estate; because, if it belonged to him, it was merely the evidence of his own extinguished debt, and not property; and if it belonged to the ward, it would pass with the rest of the ward's estate into the custody of a new guardian.

In the same month of March 1859, Henry A. Parker was appointed guardian of Harriet E. Parker, and the relations of the guardian and the ward to the note and mortgage, which had existed during the life of Samuel A. Jewett in such an ambiguous and uncertain state, became capable of complete separation, and could be precisely ascertained. The rights and property of the ward were represented by her new guardian, Henry A. Parker; the rights and obligations of the former guardian and promisor upon the note were represented by his widow. It was competent for these parties to settle the question respecting the property in the note. If they agreed to treat it as a subsisting security, the legal title to which was in the ward, the new guardian would accept and receive it as such, and to that extent it would exonerate the estate of Abel Jewett, and the responsibility of Samuel A. Jewett in his capacity as guardian, and the

sureties on his bond. But if Mrs. Jewett retained it, with the consent of the new guardian, it would be extinguished as a debt, and the remedy of the ward would be upon the guardian's bond. Mrs. Jewett in the first instance delivered it to Henry A. Parker, the guardian, with other securities belonging to the ward's estate, as a part of that estate. But, after taking advice, he declined to accept and retain it as such, and returned it to Mrs. Jewett, claiming that it was paid. Mrs. Jewett received it, and proceeded to contract to sell some of the lands embraced in the mortgage, for the purpose of raising money to pay the amount of the note, and, so far as appears, retained it in her possession until her administration terminated by her marriage with Henry A. Parker in September 1861. Meantime, Henry A. Parker, as guardian, had cited her, and the representative of Abel Jewett, and the sureties on the guardian's bonds of Abel and Samuel A. Jewett, in the probate court, to settle the guardianship accounts of Abel Jewett and Samuel A. Jewett. In November 1861, Charles F. Parker succeeded Mrs. Jewett in the administration of the estate of Samuel A. Jewett; and the next that is heard of the note and mortgage, they are in his hands. He must have received them from Mrs. Jewett, among the papers belonging to her husband's estate. She held the note as an extinguished and paid note. Henry A. Parker, as guardian, instituted a suit against the sureties on Samuel A. Jewett's guardian's bond, and in 1863 judgment was rendered against them for the whole amount due the estate of the ward, which they paid.

It is at this stage of the transaction that the difficulties in the demandant's way become insuperable. No allowance was made in the judgment against the sureties for the note and mortgage, as a part of the ward's estate. The ward, represented by her guardian, had renounced all title to them, and the note was in the hands of the administrator of the promisor, delivered up as a discharged note, while the whole amount of it was sued for and recovered in the suit on the guardian's bond. It is indeed shown that Henry A. Parker agreed, when he received payment of the judgment against the sureties, (of whom Luther Tarbell

was one,) that Charles F. Parker should deliver to the proper persons all papers in his hands touching the estates of Samuel A. Jewett and Abel Jewett; and that Luther Tarbell told him that he should collect this note and mortgage.

But the difficulty is, that we can find no authority in Charles F. Parker to issue the note as a subsisting obligation to any person, or that his delivering the paper to Luther Tarbell gave it any validity or effect. The guardian, Henry A. Parker, had elected to treat this note as cancelled in the hands of Samuel A. Jewett, the promisor, either as executor of his father or guardian, and had recovered a judgment based upon this election. Mrs. Jewett, while administratrix of her husband, had acceded to this claim. To make up the judgment, the note must have been charged to Samuel A. Jewett, either as executor or guardian. This would have the same effect as if he had charged himself with the payment of it in his guardianship account, or as the executor of his father, in settling his father's guardianship account. In either case it would extinguish the note, and his administrator would have no authority to reissue it as a contract of the intestate.

The hardship upon Luther Tarbell as a surety upon the bond is obvious, but we do not see that it can be remedied in this action. *Judgment on the verdict.*