OTIS J. TARBELL vs. FRANK J. JEWETT.

Middlesex. January 12, 1877; January 14, 1878. — September 27, 1880.

A., the guardian of a minor, at the time of his death, held the promissory note of B., payable on demand to his order as guardian. B. and C. were appointed executors of A.'s will, but no mention of the note was made in their inventory or accounts. C. was also appointed guardian in place of A., and several payments were subsequently indorsed upon the note, leaving a balance due. C. died and D. was appointed guardian in his stead, and he refused to receive the note as the property of his ward. B. resigned his office as executor, and E. was appointed administrator with the will annexed of the estate of A., brought an action against B. on the note, obtained judgment and levied execution on land which B. had conveyed in fraud of his creditors. *Held*, on a writ of entry by the purchaser at the sale on execution to recover possession of the land, that the note was extinguished as a contract; that the amount due thereon having become assets in the hands of B. as executor of A., no action could be maintained upon it by E.; and that the tenant, not being a party or privy to the action by E., was not concluded by the judgment therein.

WRIT OF ENTRY to recover a parcel of land in Pepperell. Plea, *nul disseisin.* Trial in this court, before *Lord*, J., who ruled, as requested by the tenant, that he was entitled to a verdict, which was returned accordingly; and the demandant alleged exceptions. The facts appear in the opinion.

The case was argued in January 1877, and reargued in Jan uary 1878, by *J. N. Marshall*, (*M. L. Hamblet* with him,) for the demandant; and by *T. H. Sweetser & F. A. Worcester*, for the tenant.

ENDICOTT, J. To understand fully the ground upon which we rest the decision of this case, it will be necessary to recite such portion of the facts as we deem material.

Abel Jewett died in January 1854, leaving a will, in which his two sons, Otis P. Jewett and Samuel A. Jewett, were named executors. The will was soon after admitted to probate, and the executors were duly qualified, and proceeded to settle the estate. The will devised to these two sons a certain parcel of real estate, subject to certain uses in favor of the testator's widow during her life, and also to an annuity to her. Otis P. Jewett conveyed his half of this estate to his brother, Samuel A. Jewett, by deeds dated September 2, 1854, and January 19, 1858; and in December 1858 Samuel died, leaving as his sole heir at law Franklin

J. Jewett, the tenant, who has since continued in possession of the whole estate, subject during the life of the widow, who died in 1873, to the uses and annuity named in the will. Otis P. Jewett continued to hold the office of executor until October 27, 1863, when he resigned, and Samuel Parker was appointed administrator of the estate with the will annexed. At the time of the death of Abel Jewett, he was the guardian of the minor children of F. F. Parker, deceased, and held the note of Otis P. Jewett, dated May 1, 1853, and payable on demand to his order, as guardian of these minor children, upon which $2500 and interest was due. The note was never indorsed. After his death, his son Samuel A. Jewett was appointed guardian of the minors, as successor to his father, and among the effects which came into his hands as belonging to the minors was this note. The note of one executor payable to the testator and due to the estate thus came into the hands of Samuel A. Jewett, who was acting in the double capacity of co-executor under his father's will, and guardian of the minors whose money had been invested in the note. Several payments are indorsed on the note, made between May 1 and November 9, 1854, leaving a considerable balance due thereon. By whom these payments were made, or in what capacity Samuel A. Jewett received them does not appear in terms; but it is to be presumed that they were made by Otis P. Jewett, the maker, who thus acknowledged his liability upon the note; and as the report finds that neither the note, nor any balance due thereon, was inventoried or accounted for by the executors, we may assume that Samuel A. Jewett intended to receive the payments as guardian of his wards. No other payments were made thereon during the lifetime of Samuel A. Jewett. Upon his death in 1858, Henry A. Parker was appointed guardian in his stead, and he refused to receive the note "as the property of his wards, on the ground that the lending of the money for which it was given was an improper investment." He therefore looked to the estate of Abel Jewett, of which Otis P. Jewett, the maker of the note, was the surviving executor, for the payment of the sum due him as guardian; but although Otis P. Jewett continued to act as executor for the ensuing six years, no payment was made to the new guardian. Immediately after the appointment of Samuel Parker as administrator with the

will annexed, in October 1863, he brought an action against Otis P. Jewett to recover the balance due on the note, and judgment was obtained and execution issued thereon in February 1864. Whether Samuel Parker received from Otis P. Jewett any other assets belonging to the estate of Abel Jewett does not appear.

Upon the execution thus obtained, the undivided half of the real estate, conveyed by Otis P. Jewett to his brother Samuel, was duly set off to Parker, as administrator, in March 1864, Parker contending, as the demandant now contends, that the deeds to Samuel A. Jewett were given and received to defeat, delay and defraud the creditors of Otis P. Jewett. No other proceedings appear to have been had until 1874, when, upon a writ of *scire facias* sued out by Parker, the previous levy was set aside, and another execution issued, which was returned in no part satisfied. Thereupon Parker, in his capacity as administrator, brought an action on the judgment, and caused to be attached the undivided half of the real estate before referred to, the record title thereto standing in the name of Samuel A. Jewett, deceased, of whom the tenant was the sole heir at law. Judgment having been entered, and execution having issued, the undivided half, so attached on the writ, was seized and sold by public auction, and duly conveyed to the demandant.

It is to be observed that the demandant's case rests solely on the judgment finally obtained and the levy last made in the suit originally brought by Samuel Parker, administrator, against Otis P. Jewett, upon the note given by him to his father as guardian. The tenant was not a party or privy to that suit, and is not concluded by the judgment; but may show that the note upon which it was founded was not a valid debt, or was paid, or that the administrator with the will annexed could not maintain an action upon it against the maker, who had been executor of the estate. See *Downs* v. *Fuller*, 2 Met. 135; *Inman* v. *Mead*, 97 Mass. 310; *Peterson* v. *Farnum*, 121 Mass. 476.

The tenant, among other defences, contends that the note was not a valid subsisting note in the hands of Samuel Parker, administrator, but had been paid by operation of law, the maker of the note having been the duly qualified and acting executor of the estate; on the familiar principle that, when a creditor appoints his debtor his executor, the law presumes that to have

been done by the executor which it was his duty to do, and that the sum due on the note had become assets of the estate. In other words, that the estate of Abel Jewett was liable to the wards or their guardian for the amount thus invested in the note, and for that amount the executor, Otis P. Jewett, was indebted to the estate. And as no action could have been brought on the note by the original executors, so no action can be brought upon it by the administrator with the will annexed.

The cases are numerous in which this court has recognized and enforced this general doctrine. *Stevens* v. *Gaylord*, 11 Mass. 256. *Winship* v. *Bass*, 12 Mass. 198. *Hobart* v. *Stone*, 10 Pick. 215. *Ipswich Manuf. Co.* v. *Story*, 5 Met. 310. *Sigourney* v. *Wetherell*, 6 Met. 553. *Leland* v. *Felton*, 1 Allen, 531. *Tarbell* v. *Parker*, 101 Mass. 165. *Chapin* v. *Waters*, 110 Mass. 195. *Hazelton* v. *Valentine*, 113 Mass. 472, 481. *Choate* v. *Arrington*, 116 Mass. 552. See also *Benchley* v. *Chapin*, 10 Cush. 173. *Mattoon* v. *Cowing*, 13 Gray, 387. *Commonwealth* v. *Gould*, 118 Mass. 300.

It is very clear that the new guardian could properly refuse to receive the note as the property of his wards, and was not bound to rely solely on Otis P. Jewett for payment of the debt. He could not properly take it, if Otis P. Jewett was not responsible, or if the security was doubtful; and as Otis P. Jewett had made no payment thereon between November 1854 and 1858, it was the duty of the new guardian to look to the estate of Abel Jewett, of which the maker of the note was then, and continued to be for five years after, the surviving executor, for the payment of the amount due his wards. Even if Samuel A. Jewett, who was both executor and guardian, had in his lifetime elected or attempted to treat this note as the property of his wards, and not as assets of the estate of Abel Jewett, the new guardian was not bound to do so. The note was simply a contract between Abel Jewett and Otis P. Jewett, and the description of Abel Jewett therein as guardian was merely *descriptio personæ*, and did not change the character of the contract, or the relations of the parties thereto. It is true this description disclosed the fact that the guardian had lent the money of his wards to the maker of the note, and if there had been any value in the note, as a security or investment, the new guardian could have availed himself of it; but he was not restricted to that course, and he

could call upon the estate for the whole sum due. See *Burgess* v. *Keyes*, 108 Mass. 43; *Hicks* v. *Chapman*, 10 Allen, 463, 465; *Tarbell* v. *Parker*, 101 Mass. 165.

The note therefore became assets of the estate, from which the liability of the estate to the guardian could properly be met, and it is immaterial that it was not named in the inventory or accounts.

In *Winship* v. *Bass*, 12 Mass. 198, the executor refused to treat as assets his indebtedness to the estate, on the ground that it was extinguished by his appointment as executor. The court was of opinion that it was not extinguished, but decided not to remove him from his office, because, " as he must be supposed actually to have received, for the purposes of his trust, a debt due from himself, so that he and his sureties will be responsible on their bond for such debt, the interest of the estate may require that such security may be preserved by continuing the executor in office." The executor's bond is intended to secure the estate, not merely in regard to those assets which are named in the inventory or accounts, but for all those sums which are lawful assets in the hands of the executor, but which he has omitted formally to charge himself with, either through accident or design.

The fact that an executor charges himself with his debt in the inventory or account is an important fact; it settles the question that he owes the estate, and the amount of his debt, and, in those cases where the debt has thus been accounted for, great stress has been laid upon the fact. Peculiar importance was given to this fact in *Ipswich Manuf. Co.* v. *Story*, 5 Met. 310, because from the nature of that debt, being a bond and mortgage of the executor to his testator, the court intimated that it might have been transferred, except that it had become assets, by charging it, and treating it as such. See also *Leland* v. *Felton*, 1 Allen, 531 But an executor cannot escape his liability, or change the char acter of it, by failing to charge himself with his own debt; if he could, then by neglecting his duty there would be no remedy for the estate. Nor is charging himself with it the only way in which the fact of his indebtedness may appear or be proved; and if it appears or is proved otherwise, then his liability is established as conclusively as if he had charged himself with the

debt in his inventory, and his sureties become responsible if he fails to account for it. See *Choate* v. *Arrington*, 116 Mass. 552, and cases cited; *Hooker* v. *Bancroft*, 4 Pick. 50; *In re Piper's estate*, 15 Penn. St. 533; *Williams* v. *Morehouse*, 9 Conn. 470; *Duffee* v. *Buchanan*, 8 Ala. 27.

Nor is it material that one or both of the executors attempted to treat the note, or did treat it, as the property of the wards in the hands of one executor, who was also acting as their guardian. Only on the ground that the note was part of the assets of the estate of Abel Jewett could Samuel Parker, administrator, bring any action thereon. And the demandant in his argument contends that it will be "presumed that the action was rightly brought," and that "the administrator may have brought it for the benefit of Abel Jewett's estate, or to protect it, or for some other party," citing as authority for this *Hicks* v. *Chapman*, and *Burgess* v. *Keyes*, *ubi supra*. Otis P. Jewett was not indebted to the wards, or to the new guardian, unless they elected so to hold him, which the new guardian refused to do, by declining to take his note. And it is not, and could not well be, contended, on the record before us, that Otis P. Jewett was not indebted to the estate for the sum thus lent to him, and represented by the sum due on the note at the time he resigned his office; or that he has denied that he was so indebted, or has refused for that reason to account for it as assets of the estate; or has ever resisted payment. The most that can be said is, that he and his co-executor failed or neglected to put it in the inventory, or to account for it, intending to deal with it as the property of the wards, for whom their father had been guardian; and after it became impossible so to treat the note, by the refusal of the new guardian to take it, Otis P. Jewett failed to account for it as executor in any way.

In *Ipswich Manuf. Co.* v. *Story*, 5 Met. 310, the assignment by an administrator, of a bond and mortgage due from him to his intestate and charged in his inventory, was held to transfer no interest to the assignee, although assigned as a distributive part of the estate to an heir, the bond named having been paid by operation of law, and being assets in the hands of the administrator. And in *Freakley* v. *Fox*, 9 B. & C. 130, the maker of a promissory note was appointed executor of the payee, and as

executor indorsed the note to a third person; and it was held that the indorsee could not maintain an action upon it against the maker, for the note was discharged and could not be set up as a binding instrument, the debt due upon it from the executor having become assets of the estate.

These cases decide that the acts of the executor or administrator, in dealing with the instruments on which his indebtedness to the estate arise, cannot vary or affect the rule that, as contracts between him and the estate, they are extinguished, and the sums due upon them have become assets of the estate. The acts of these two executors, therefore, did not change the relations of this note to the estate they were settling.

Even if we assume that the amount due on this note cannot be regarded as assets simply because Otis P. Jewett, the maker of the note, was also executor, on the ground that the estate of Abel Jewett was contingently or not absolutely liable, and might not be called upon to pay the note, while the guardian of the minors treated it as the property of his wards, and looked alone to Otis P. Jewett for payment; yet when the new guardian refused to take the note, because an improper and doubtful investment, the estate of Abel Jewett became absolutely liable to the wards for the amount due thereon. And as that amount was due to the estate from Otis P. Jewett, he was bound to account for it as assets. It might be considered in the nature of property received subsequently, and must be accounted for by the executor, although a new inventory need not be returned. *Hooker* v. *Bancroft*, 4 Pick. 50.

The only exception to the rule here stated, that has come within our notice, is the case of *Kinney* v. *Ensign*, 18 Pick. 232. The plaintiff was the administrator of an estate to which he was indebted on a note secured by a mortgage; and it was held that, in his representative capacity, he could redeem the mortgage for the use and benefit of the heirs and creditors of his intestate; and that, although there was a constructive payment, it did not necessarily follow that the mortgage was in equity thereby absolutely discharged; for it would be unjust and inequitable to charge the sureties with the amount, and give the whole benefit to the respondent, who had purchased the equity of redemption subject to this very mortgage. But no question of that kind

arises in the case at bar, for here there is no collateral security to protect the sureties, or upon which the devisees or creditors of Abel Jewett could rely, if the sureties were not responsible. In *Ipswich Manuf. Co.* v. *Story* and in *Tarbell* v. *Parker, ubi supra,* there were mortgages securing the indebtedness of the executor or guardian, but the debts were nevertheless extinguished by operation of law.

As the case stands, therefore, the liability of Otis P. Jewett to the estate being fully established, certainly after the refusal of the guardian to take the note, and he not having accounted for it as assets, there was a breach of the executor's bond, and the sureties were, and are, liable in the same manner as if the executors had failed to account for money received from any other debtor; and this liability did not cease by reason of the resignation of Otis P. Jewett. *Leland* v. *Felton*, 1 Allen, 531. *Stevens* v. *Gaylord*, 11 Mass. 256, 270. Where a debtor denies that a debt is due in whole or in part, that question may be tried in a suit on the bond. *Bacon* v. *Fairman*, 6 Conn. 121, 130.

But it is contended that the note, not having been in fact paid or accounted for, the administrator with the will annexed could properly maintain an action upon it against the retiring executor, Otis P. Jewett. The cases already cited would seem to be a sufficient answer to this claim; for if the assignment or transfer by an executor of the obligations upon which his indebtedness to the estate arise, and which have in fact become assets of the estate, can pass no title to a third person, because they have been paid, it is difficult to see how an administrator with the will annexed, who succeeds such executor, can either transfer those obligations or maintain an action upon them. But the authorities directly on this point seem conclusive, and it may be well to refer to them.

It was decided in *Wankford* v. *Wankford*, 1 Salk. 299, that where an obligor is made executor to his obligee, and administers some of the goods, but dies before proving the will, the debt is extinguished and becomes assets, and the administrator with the will annexed can have no action upon it. By the law of England, an executor, before probate of the will, could take possession of the testator's goods, receive money and bring actions; yet he could not go on with an action without probate, for

when he came to declare he must produce letters testamentary. So far as the question we are considering is concerned, an executor before probate then stood in the same position, as to his own debt to the estate, as an executor duly appointed under our law. In delivering judgment, Lord Holt said, "When the obligee makes the obligor his executor, though it is a discharge of the action, yet the debt is assets, and the making him executor does not amount to a legacy, but to payment and a release. If H. be bound to J. S. in a bond of £100, and then J. S. makes H. his executor, H. has actually received so much money, and is answerable for it, and if he does not administer so much, it is a *devastavit*." And Mr. Justice Powell said, "A personal action once suspended by the act of the party is gone forever; and although in some cases it may be suspended and revive again, yet never where that suspension is from the act of the party." " Some books say the action is gone, some say the debt is gone, and some say the debt remains; but they will be all reconciled by this, that the debt will be assets." See remarks of Chief Justice Shaw on this point in *Ipswich Manuf. Co.* v. *Story*, 5 Met. 310, 313. So, among the exceptions to this general rule, a distinction was made between an administrator and an executor; and as the former was appointed, not by the deceased person, but by act of the law, the action against him was suspended, and might be revived upon the appointment of an executor *de bonis non.* See *Nedham's case*, 8 Rep. 135 *a*, 136 *a*, and Frazer's note *E*; *Lockier* v. *Smith*, 1 Keb. 313; *S. C.* Sid. 79. But since the Prov. St. of 1703 (1 & 2 Anne) *c.* 12, § 1, 1 Prov. Laws (State ed.) 536, substantially reënacted in our statutes, executors and administrators with us stand on the same footing as to their interest in the estate. *Winship* v. *Bass*, 12 Mass. 198, 203.

In *Bigelow* v. *Bigelow*, 4 Ohio, 138, an obligor was appointed administrator of the obligee, and placed the amount of the bond in his inventory. A will was afterwards discovered. The plaintiff was appointed executor, and brought an action on the bond against the administrator of the former administrator, namely, the obligor, and it was held that he could not recover, on the ground that a personal action once suspended was always suspended, making no distinction between an executor and an

administrator. The discovery of the will and the appointment of an executor were held to operate only as a repeal of the grant of administration, which did not avoid all mesne acts. And the court say, "Every act of the administrator has the same validity as if he had not been superseded." Numerous authorities may be cited in support of this proposition. See Com. Dig. Adm. B. 5; Toller on Executors, 347; Wentw. Off. Ex'or, 31, (14th ed.) 73; *Cheetham* v. *Ward*, 1 B. & P. 630; 20 Edw. IV. 17; 21 Edw. IV. 3, *b*; *North* v. *Butts*, Dyer, 139 *b*; *Fryer* v. *Gildridge*, Hob. 10; *Sturleyn* v. *Albany*, Cro. Eliz. 150; *Dorchester* v. *Webb*, Cro. Car. 372; *S. C.* W. Jones, 345.

When the creditor of the testator is made executor, the same rule holds if the executor has assets, which he may retain to pay himself, in which case the debt is gone, and no action can afterwards be maintained upon it. But if there are no assets there is no extinguishment, for, as Lord Holt says, "If the executor has assets of the obligor, it is an extinguishment, because then it is within the rule that the person who is to receive the money is the person who ought to pay it; but if he has no assets, then he is not the person that ought to pay, though he is the person that is to receive it." 1 Salk. 305.

This may be illustrated by two cases. In *Fryer* v. *Gildridge*, Hob. 10, two persons were bound to a third jointly and severally. The obligee made the wife of one obligor his executrix, and died. She administered, and then her husband made her his executrix and died, leaving assets to pay the debt. Upon her death, the plaintiff Fryer took administration with the will annexed of the obligee, and brought an action against Gildridge, the surviving obligor; and it was held that the action could not be maintained, because, when the deceased obligor made the executrix of the obligee his executrix, and left assets, the debt was satisfied presently by way of retainer, and no action could be had for that debt.

On the other hand, a case arose in Ohio, where it was held, in a very able and instructive opinion, that the right of action did revive, there being no assets. A creditor was appointed administrator of his debtor, with another person, and administered, but received no assets which he could retain for the payment of his debt, and died. It was held that his administrator

could maintain an action against the surviving administrator, because his intestate received no assets, and it could not be assumed that the debt was paid or extinguished. *Hall* v. *Pratt,* 5 Ohio, 72. So in *Lowe* v. *Peskett,* 16 C. B. 500, a testator appointed as one of his executors a creditor who held his note; this executor, being payee of· the note, indorsed it to a third party, who brought an action upon it against the executors; and the action was maintained, because the note had not been satisfied out of the estate by the payee, who had received no assets.

We are not aware of any case where it has been held that a debt due from an executor, having once become assets, can be revived, and an action maintained upon it by an administrator with the will annexed; nor of any case where a debt due to the executor has been held not to be extinguished, if sufficient assets come to his hands.

In *Ipswich Manuf. Co.* v. *Story,* 5 Met. 314, Chief Justice Shaw says: "In the case of *Winship* v. *Bass,* it is intimated that a determination of the executor to resist payment of such debt, until compelled by a judgment of court, may, in some cases, be deemed a sufficient cause for removing such executor. This certainly implies that, upon his removal, and the appointment of an administrator *de bonis non,* an action for his debt, due to the estate, may be brought. But it also intimates the case in which such proceedings may take place. It is when the executor denies his debt and resists payment; that is, refuses to account for it as assets." As an action may be brought on the executor's bond if he refuses to account for his debt as money received, and as the court decided for that reason not to remove the executor in *Winship* v. *Bass,* it does not appear to be necessarily implied that the administrator can bring an action, or that it is the only remedy. In *Winship* v. *Bass,* the denial was on the ground that making him executor was a gift of the debt, and he was not bound to account for it it any form. But however that may be, the case at bar does not come within the narrow limits within which it is said such an action would be confined. It does not appear that Otis P. Jewett denied his debt, or resisted payment, or refused to account for it, because he was not liable. On the contrary, he acknowledged it by

making payments upon it, neglected to charge himself with it in the inventory or accounts, and when the action was brought upon it apparently suffered default.

The case of *Leland* v. *Felton*, 1 Allen, 531, has a bearing on this question. The controversy there was whether the appellee could be charged for his debts to the estate in an account, rendered after he had resigned his trust as executor, and an administrator with the will annexed had been appointed. The Probate Court had decided that he could not, from which decree the administrator with the will annnexed had appealed. But it was held that he could be so charged, which of course rendered his sureties liable. It was contended at the argument, that the debt of the executor was not extinguished by the acceptance of the trust, but that the remedy only was suspended; and that the respondent having resigned, and an administrator having been appointed, the remedy to collect the debt revived, and the reason for treating it as assets ceased. This point is not considered in terms by Mr. Justice Dewey in delivering the judgment, but the conclusion which he reaches is utterly destructive of the position taken by the appellee. He states in substance that the law gives the right to those interested in the estate to treat as assets, received by the executor, the amount of his acknowledged debts to the testator, and so the administrator could properly demand that the executor should be charged in his account rendered after his resignation; but he nowhere intimates that the remedy revives after the resignation, or that the administrator has a choice of remedies, and can elect either to have the executor thus charged, and so hold the sureties, or to bring an action on the debt against him at his option. Indeed, the only ground upon which the executor could be charged is, that there was no outstanding debt or contract, but only assets for which he must account; and this precludes the idea that any action could be maintained by the administrator.

We are therefore of opinion that the note was extinguished as a contract, and the amount due thereon, having become assets in the hands of Otis P. Jewett, the executor, no action could be maintained upon it by the administrator with the will annexed.

*Exceptions overruled.*