## MASSACHUSETTS GENERAL HOSPITAL *vs.* CAROLINE E. FAIRBANKS.

Suffolk.   Nov. 10, 11, 1881. — March 13, 1882.   MORTON, C. J., did not sit. W. ALLEN & C. ALLEN, JJ., absent.

An insane person was received into an asylum, and, after he had been there two weeks, an express contract in writing was made by third persons to pay his board and other expenses there from the time of entrance, differing in terms from the liability which the law would impose upon an insane person. *Held,* that no promise could be implied on the part of such insane person to pay anything, although it was orally understood between the persons signing the contract and the proprietors of the asylum that the board and supplies were to be furnished on the credit of the insane person, and that their liability was to be only collateral to the liability of the insane person; although the price of board was subsequently raised with the assent of one of the persons signing the agreement and of the insane person; and although the guardian of the insane person subsequently agreed to pay the debt out of his ward's estate, and in part paid it.

A person, in anticipation of being appointed guardian of an insane person, who was then at an asylum, promised to pay the treasurer of the asylum for the board and supplies furnished the insane person, to remove him when discharged, and, if the person was removed uncured, to pay the board for a certain length of time. He was soon after appointed guardian, and afterwards resigned, and a new guardian was appointed. *Held,* that his liability under the contract was not ended by the appointment of the new guardian.

CONTRACT on an account annexed for board and other supplies furnished the defendant at the McLean Asylum for the insane at Somerville, from October 1, 1872, to August 25, 1873.

The writ, dated December 19, 1876, alleged that the defendant was an insane person, and that Edward A. Caswell was her guardian. Service was made upon Caswell, who appeared and filed an answer, alleging that before October 1, 1872, the defendant was insane, and has since continued to be so; that about October 15, 1869, the plaintiff made an agreement with William H. Towne and Isaac H. Wright for the defendant's board and the supplies to be furnished her at the McLean Asylum while she should be there; that, after she had been removed therefrom, the plaintiff brought an action in the Superior Court on this agreement, against Towne and Wright, for the same cause of action for which this action is brought, and at October term 1875 recovered judgment thereon, which judgment is still in force.

After the former decision, reported 129 Mass. 78, the case was tried in the Superior Court, without a jury, before *Dewey,* J., who reported the case for the determination of this court in substance as follows :

The plaintiff read the pleadings, and rested. There was no dispute as to the items of the plaintiff's account. The guardian put in evidence of the following facts :

On October 15, 1869, William H. Towne and Isaac H. Wright signed and delivered the following instrument to the plaintiff : " In consideration of Mrs. Caroline Fairbanks being admitted a patient into the McLean Asylum for the insane, at our request, we, the undersigned, jointly and severally promise the Massachusetts General Hospital to pay the treasurer thereof at said asylum, quarterly, on the first days of January, April, July and October, with interest after said days respectively, the rate of board which may from time to time be determined by the trustees of said hospital for said patient; to provide or pay for all requisite clothing and other things necessary or proper for the health and comfort of said patient; to pay for all proper expenses incurred for the return of said patient to the asylum in case of elopement; to remove said patient when discharged; to

reimburse funeral expenses in case of death; and if removed uncured against the advice and consent of the superintendent, before the expiration of three calendar months, to pay board for thirteen weeks, the rate at which the patient is admitted below, and the trustees may change the same at any time, giving us three weeks' notice by mail in case the rate is to be raised. Witness our hands this fifteenth day of October, 1869."

On the same paper was the following order of admission, signed by two of the visiting committee of the plaintiff: "Receive the above-named patient if brought within two weeks from date, at $30 per week." By virtue of this order, the defendant, after the obligation of Towne and Wright was given, was retained at the McLean Asylum until August 25, 1873.

The plaintiff then put in evidence tending to prove the following facts:

The agreement of Towne and Wright was not executed until Mrs. Fairbanks had been in the hospital about a fortnight, but bore date of the time of her admission, October 15, 1869. On her admission to the hospital, upon the certificate of two physicians, under an application of one of the proprietors of a hotel in Boston, where she was boarding, she was suffering from an attack of acute mania. The price to be paid for board was arranged by the committee of the hospital, after consultation between the superintendent and Towne, who was, and for some time had been, her attorney at law, and it was fixed with reference to what was stated by Towne as to the amount of her property and income. After she had been at the asylum about a fortnight, the superintendent called Towne's attention to the requirement of the hospital, that two persons should sign an agreement in the form of that signed by Towne and Wright, dated October 15, 1869. Towne, being told by the superintendent that when a patient was a person of responsibility this agreement was a mere matter of form, and that it did not matter if the persons signing were not persons of pecuniary responsibility, signed the agreement, expecting to be appointed guardian of the defendant, his application therefor in the Probate Court being on October 16, 1869, and his appointment on November 1, 1869; and, for Towne's accommodation, as the superintendent of the asylum was informed at the time, Wright also signed it,

neither Towne nor Wright being related to Mrs. Fairbanks. From October 15, 1869, to August 25, 1873, all the board and supplies furnished Mrs. Fairbanks by the plaintiff were charged by the plaintiff in its regular books of account to Mrs. Fairbanks; but this was the usual course as to patients to identify them, and did not show to whom credit was given. The plaintiff's bills for board and supplies were rendered quarterly to whomsoever was the guardian at the time. Some of them were made out in the name of the defendant and the rest in the name of the guardian, none to Towne and Wright, and they were paid by Towne, while guardian, out of the defendant's money received by him as guardian, so far as they were paid. Those in charge at the hospital, when the defendant wanted anything, came and saw Towne, who dealt with them in the capacity of guardian. The board was first fixed at $30 a week, until the superintendent said she could go into the Appleton Ward on payment of $50 a week, as the price of the board. Towne talked with her about it, and she wished to go into this ward, and did. The defendant, in the years 1872 and 1873, although an insane person, was competent to understand and did understand that the board and supplies furnished her were to be paid to the plaintiff out of her money, through her guardian. Her bills from October 1, 1872, were unpaid when Towne resigned his guardianship, on March 10, 1873; and Caswell was appointed his successor, on April 25, 1873, and at once, on his appointment, began to make payments to the plaintiff on account of these arrears.

In July 1873, the plaintiff sent Caswell a bill for all the charges in the account annexed to the plaintiff's declaration up to July 1, 1873, including those accruing while Towne was guardian. The bill was made out to Caswell as guardian, and in reply Caswell wrote to the plaintiff's superintendent, " I shall begin immediately to pay off your bill and liquidate the indebtedness as fast as possible," and afterwards, on July 8, 1873, wrote said superintendent, signing as guardian, a letter containing this language : " I shall send you a check of $50 this week and a much larger one by the 15th, and so continue to pay off the ward's indebtedness as soon as possible.", As guardian, the said Caswell made payments on account of the same.

Another bill was sent by the plaintiff to Caswell, made out to him as guardian, after the defendant left the plaintiff's asylum, covering all the items of the plaintiff's account; and, in reply, Caswell, in October 1873, sent to the plaintiff's superintendent a letter containing these words: " Enclosed is a check for $300, and I shall send on every month an equal amount, if possible, something always; " — and at the same time sent to the plaintiff's attorney at law a letter containing the following language: " I have received a note from Mr. Towne to-day, enclosing one from yourself to him, regarding Mrs. Fairbanks's bill.  Mr. Towne, as you may know, resigned the guardianship to me some six months ago, when the property of Mrs. Fairbanks in Boston (her main support) was paying nothing; since then I have leased it at $2400 per annum.  I acknowledge her indebtedness to the asylum, and am paying $100 or $200 every month, and after February 1, when the stores are rented, shall pay faster."

The defendant contended that, the plaintiff having made an express written contract with Towne and Wright, the evidence was not competent to show an implied contract with the defendant, and could not control the written contract.  The judge ruled that the plaintiff's evidence, or such portions of it as were competent, could not, as matter of law, control the legal effect of the agreement of October 15, 1869, as evidence that Towne and Wright were alone liable for the board and supplies included in the plaintiff's demand sued upon, and that the defendant was not liable therefor.  To this ruling the plaintiff excepted.

The plaintiff further contended that the liability of Towne and Wright under the agreement of October 15, 1869, was terminated on April 25, 1873; and that thereafter the defendant was solely liable for the board and supplies furnished her and charged after that date; and put in evidence, in connection with the previous evidence of the plaintiff, of the following facts:

It was understood between the plaintiff and Towne, when he signed the agreement dated October 15, 1869, that he did so because he had been appointed, or expected to be or was on the point of being immediately appointed, guardian of the defendant, and was to have charge of her property.  Towne, on March 10, 1873, resigned his office as guardian; and, upon the appointment of Caswell as guardian, on April 25, 1873, Towne, in

writing, in behalf of himself and Wright, notified Dr. Jelly, the superintendent, that they then terminated their liability to the plaintiff under the agreement of October 15, 1869. Before Towne resigned as guardian he told the superintendent that he was going to resign, that Caswell, who had married the defendant's daughter, was to be appointed in his place, and that he wanted to terminate any liability to the plaintiff under his agreement. The superintendent made no objection. The judge found that the superintendent had no authority to waive any rights of the plaintiff, nor to release Towne and Wright from their obligation, and that there was no release; and ruled that the plaintiff's evidence did not show that the liability of Towne and Wright under the agreement of October 15, 1869, was terminated on or before April 25, 1873, or that the defendant was liable for the board and supplies furnished after April 25, 1873, or before her removal from the asylum; and that, on the evidence, the judge did not find any assent by the plaintiff to the termination of said liability; and found for the defendant.

If the plaintiff's evidence showed a liability on the part of the defendant for the board and supplies furnished her by the plaintiff, notwithstanding the agreement of Towne and Wright, the plaintiff was to have judgment for the whole amount of its demand and interest. If the liability of Towne and Wright was terminated on or before April 25, 1873, judgment was to be entered for the plaintiff for $1255.45. If the plaintiff was not entitled to recover anything, judgment was to be entered for the defendant.

*D. E. Ware*, for the plaintiff.

*G. D. Noyes*, for the defendant.

DEVENS, J. When this case was last before the court it appeared that, contemporaneously with the admission of the defendant into the asylum, an agreement was made with Towne and Wright for her board; and, the board having been furnished under that agreement, it was held that, as its terms admitted of only the construction that it was absolute in its character, no contract could be implied on the part of the defendant to pay for it. *Mass. General Hospital* v. *Fairbanks*, 129 Mass. 78.

Assuming the evidence offered to be competent, it is now shown that the contract made with Towne and Wright, although

bearing date on October 15, was actually executed a fortnight later, and that the defendant had, at the time of its execution, been for a fortnight in the asylum. It is further shown that, when the agreement was signed by Towne and Wright, it was understood between them and the plaintiff that the board would be furnished upon the defendant's credit, and their liability was to be only collateral to the original liability of the defendant therefor.

Conceding that there may be an implied contract with one party, to which a written agreement signed by another to pay the same debt may be collateral only, and that, in an action on the implied contract, it may be shown that the written agreement, although absolute in its terms, was orally agreed to be collateral only, it would not remove the objection to the recovery of the plaintiff in the present case. In order that such written agreement should be collateral only, it must be for the same liability as that which might be implied against another. If an agreement contain stipulations differing entirely from those which could be implied against another, and for a debt differing from that which such other could be compelled to pay, whatever name the parties may see fit to give, it must be held an independent, and not a collateral, agreement. If it relate to the same subject matter as the implied agreement, the party accepting and acting under it substitutes the liability incurred by its signer for that of the party he might otherwise charge. The inconsistency of any contract for board which could have been implied against the defendant, who was brought an insane woman to the asylum, with that into which the plaintiff entered thereafter with Towne and Wright, shows that it was accepted by the plaintiff as a substitute therefor. It was dated back in order that board already furnished should be covered by it, and that theretofore, as well as thereafter, Towne and Wright should be bound by its terms. The only contract which could have been implied against the defendant was one to pay a reasonable sum for necessary board and supplies, furnished her while there, suitable to her condition; but Towne and Wright agreed to pay whatever sum the trustees might determine, which amount might be changed from time to time. They agreed also, as a part of their contract, to pay other expenses for which she could

not then have been liable on any implied promise, and further, under certain circumstances that board for thirteen weeks should be paid whether furnished or not. · The plaintiff cannot have furnished the board on two contracts so radically different; one or the other must have been relied upon. The circumstances all show that it was that signed by Towne and Wright, and they are not controlled by evidence of what was said between the plaintiff and Towne and Wright when their agreement was signed. The court was therefore justified in holding that the evidence could not control the legal effect of the agreement of October 15, 1869, as evidence that Towne and Wright alone were liable, and that the defendant was not.

· Nor does the fact that the board originally fixed at $30 a week was afterwards raised to $50 a week establish the liability of the defendant. The arrangement was made by Towne, by which she was to have superior accommodations in the Appleton Ward, and the facts that it was agreeable to her and that she wished to receive such accommodations do not establish her liability. Even if the effect of this contract with Towne alone was to release Wright from his liability, or to leave him only liable for $30 a week, the change was made by reason of the contract with Towne, and it was he, and not the defendant, who was liable upon it for the board furnished.

Nor can the admissions or payments made by Caswell, who was at a subsequent period made the guardian, render the defendant liable. It is not in the power of the guardian to make a contract which shall bind the estate of his ward. *Forster* v. *Fuller*, 6 Mass. 58. *Jones* v. *Brewer*, 1 Pick. 314.

But, even admitting the original liability of Towne and Wright, it is contended that this was terminated on April 25, 1873, when Caswell was appointed guardian, and when Towne, in behalf of himself and Wright, notified the superintendent, Dr. Jelly, that they terminated their liability under the agreement of October 15, 1869.

The plaintiff contends that, by the terms of the agreement, according to its reasonable construction, Towne was only to be liable during his guardianship of the defendant, while he might remove her if he chose, and while he might reimburse himself from her property in his hands. But, even if Towne, when he

entered into the contract, did so under the expectation of reimbursing himself when appointed guardian, the agreement was in no respect limited to that term. It came into effect at once, although the appointment was not then made; it continued to exist, although the appointment was at an end. He was under no obligation to enter into it, such as might be inferred if it were his duty to support her. The case of *Stinson* v. *Prescott*, 15 Gray, 335, where the contract of a husband for the support of his wife was held to be terminated by his own decease, and not to have made his estate chargeable thereafter, is quite distinguishable. The marital relation, which was the foundation of the obligation to support, ceased with the decease of the husband, and it was the existence of this which had induced him to enter into the contract. But there was no such obligation or duty on the part of Towne, even when guardian, as that which the law had devolved upon the husband, and although he may have thought that circumstances would occur which would enable him to protect himself, and that has proved an error, he cannot escape the liability he has voluntarily incurred.

The superintendent had no authority to release the rights of the plaintiff, and there was in fact no release or waiver of them, nor any assent thereto by him. This is found by the court, and the notice to him was therefore ineffectual. Whether any notice could have been given to the plaintiff through its trustees which would have availed, need not be considered. There was no other notice than that to the superintendent.

*Judgment affirmed.*