ELLIOTT H. PEABODY, administrator, *vs.* ALBION S. NORTH.

Worcester.   March 2, 1894. — June 21, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Contract — Statute of Limitations — Guardian and Ward — Payments pro tanto on Claim for the Price of Land — Inferences of Fact to be drawn from agreed Facts.*

A., who in 1882 was appointed guardian of F. and continued as such until his death in 1888, sold, under license of Probate Court, certain premises in 1883 to N., and N. gave A. in payment two promissory notes. The sale being void, no conveyance was made, and seven months later A. legally sold the premises again to N. No new notes were given, nor any payments made, nor any understanding had as to payment. In December, 1883, A. executed a deed to N.,' which was not delivered until after suit brought. Save as may hereinafter appear no payments were ever received from N. on account of the notes which remained in A.'s possession until February, 1891, and during such possession no indorsements were made thereon, and except as hereinafter stated no payments were applied by A. or the plaintiff, P., to the account against N. A. sued N. upon the notes and an account annexed, the writ being dated July 20, 1890. In February, 1891, A. indorsed the notes to P., the administrator of F., and P. sued out his writ in the present action, dated February 16, 1891, against N., who set up among other defences the statute of limitations. No payments upon the notes or account were ever made by N. to P., except as may be inferred from the facts herein referred to. Before the first sale A. desired N. to pur-

chase the premises and take care of his ward, F., agreeing that charges, etc. should go towards the price to be paid by N. for the premises, but no understanding was had after the first or second sale except as it might be inferred to continue. N. took possession, claiming to be owner, and took care of F. until his death. No accounting was ever had with A., but a certain amount was expended by N., as appeared in a suit by N. against A. The last named credited himself in his account as guardian with a portion of the sum due N under the arrangement. The judge, who was to draw from the agreed facts any inferences of fact which might legitimately be drawn therefrom, found for the plaintiff. *Held*, that the judge might well find that the defendant agreed to treat the sum which should reasonably become due to him for care and maintenance before he should pay for the land as a payment toward the price of the land, and he might give credit accordingly upon the plaintiff's claim, and thus avoid the defence of the statute of limitations.

CONTRACT. The declaration was upon two notes, one for $1,600 and the other for $100, both being on demand, to the order of Aaron O. Wilder, guardian of Fanny G. North, with interest at the rate of six per cent per annum. The declaration also contained a count on an account annexed for $1,700, for the purchase price of a farm, with interest amounting to $786.53, making $2,486.53, less a credit of $840 for board of Fanny G. North until her death, on January 30, 1888, leaving a balance due of $1,646.53. The defendant set up, among other defences, the statute of limitations.

The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court, on appeal, on agreed facts, in substance as follows.

On October 24, 1882, Aaron O. Wilder of Leominster was appointed guardian of Fanny G. North of Westminster, an insane person, and continued as such until her death, on January 30, 1888. Wilder, acting under a license of the Probate Court, on March 27, 1883, sold certain premises in Westminster to Albion S. North, who bid at the sale the sum of $4,000. The premises were sold subject to a mortgage for $2,600. North gave to Wilder in payment for the land the two promissory notes declared upon. The sale was insufficiently advertised, and was treated as void by Wilder and North, and no formal conveyance was made. Wilder proceeded to sell the premises again by public auction, on October 30, 1883, all statutory requirements being fulfilled, and the premises were struck off to North at a price which for the purposes of the agreement was admitted to be $4,000. No new notes were given and no pay-

ments made on account of the second sale, nor was any agreement made or understanding had as to how or in what manner the premises should be paid for. On December 5, 1883, Wilder executed a deed of the premises to North, but it was not delivered to North or to his agent until after the bringing of the suit. Save as may appear from facts hereinafter stated, no payments were ever received by Wilder from North on account of the notes, which remained in Wilder's possession until about February 1, 1891, nor so long as they remained in his possession were any indorsements made thereon, nor except as herein stated were any payments of any name or nature made to or applied by Wilder or the plaintiff to the account against North growing out of the first or second sale. Wilder sued North upon the notes, and upon an account annexed for the purchase price, the suit being still pending in the Superior Court and the writ being dated July 20, 1890. About February 1, 1891, Wilder indorsed the notes to Elliott H. Peabody, the plaintiff in this action, who had been duly appointed administrator of the estate of Fanny G. North. Thereupon Peabody sued out his writ in this action, dated February 16, 1891, against North. No payments upon the notes or account set forth in Peabody's declaration have ever been made to Peabody, or to any one for him, by North, or by any other person for North, except as may be inferred from the facts herein referred to. The notes and accounts set forth in Peabody's declaration are the same notes and accounts set forth in Wilder's suit and declaration, and they are for the same cause of action.

Previously to the first sale Wilder desired North to purchase the premises and to take charge of Wilder's ward, agreeing to pay him for his charges and disbursements, the sum which should become due therefor to go towards the price to be paid by North for the farm; but no specific agreement was made to that end, and no talk or understanding was had after the first or second sale, except as that understanding might be inferred to continue. North entered into possession, claiming to be the owner of the farm, and took upon himself the care and maintenance of the ward, who remained in his care until her death. No accounting was ever had with Wilder, but the amount expended by North was $1,376.68, as appears in detail in the suit

of *North* v. *Wilder* now pending in the Superior Court. Wilder credited himself in his account as guardian, filed in the Probate Court, with a portion of the sum due to North under the contract or arrangement.

The judge was to draw any inferences of fact from the foregoing facts which might legitimately be drawn therefrom, and if he found for the plaintiff the damages were to be assessed at $924 as of November 1, 1892; otherwise, judgment was to be entered for the defendant.

The case was submitted on briefs to all the judges.

*E. P. Pierce & J. A. Stiles*, for the defendant.

*W. S. B. Hopkins & F. B. Smith*, for the plaintiff.

ALLEN, J.   This action is brought upon two promissory notes, and also upon an account annexed.   The notes were signed by the defendant, and were payable to Wilder as guardian of Fanny G. North, and after her death were indorsed by the payee to the administrator of her estate.   There is also a count upon an account annexed, for the purchase price of the land sold to the defendant by Wilder as such guardian.   It is stated in the agreement of facts, that after the first sale, which proved invalid, the defendant gave the notes to said Wilder in payment for the land.   Properly, the notes should have been made running directly to the ward, but the fact that they ran to the guardian does not invalidate them.   *Brown* v. *Dunham*, 11 Gray, 42.   *Burgess* v. *Keyes*, 108 Mass. 43.   *Tarbell* v. *Jewett*, 129 Mass. 457, 460.   It is not denied by the defendant, and it is now to be assumed, that the defendant's title to the land was made good by the subsequent delivery of the deed to him.   It may be inferred that both parties were bound to carry the second sale into effect, and the actual occupation of the land by the defendant, and the bringing of the present action by the plaintiff to enforce payment of the price, confirm this view.

We do not find it necessary to decide when the statute of limitations began to run, that is, when the cause of action against the defendant accrued, because upon the facts agreed the court was warranted in treating the sums due to the defendant for his services and disbursements as payment *pro tanto* on the claim for the price of the land.   It was stipulated that the court might draw any inferences of fact which might legitimately

be drawn from the facts expressly set forth.   The court might well find that the defendant entered into possession of the land, claiming to be the owner thereof, and took upon himself the care and maintenance of Mrs. North, under an agreement or understanding that he should be paid for his charges and disbursements, and that the sum which should become due to him therefor should go towards the price to be paid by him for the land.   His care and maintenance of her continued until her death, on January 30, 1888.   It is true that a guardian in contracting for his ward's support binds himself personally, and that he does not thereby directly bind his ward's person or estate.   *Rollins* v. *Marsh*, 128 Mass. 116.   *Massachusetts General Hospital* v. *Fairbanks*, 132 Mass. 414.   But he is entitled to reimbursement out of his ward's estate for reasonable expenses incurred for the ward.   In the present case there is no dispute as to the sum reasonably due to the defendant for the care and maintenance, and the administrator of Mrs. North's estate has never sought to repudiate the guardian's agreement.   The case therefore stands thus.   The defendant assumed the care and maintenance of Mrs. North under an agreement that he should be paid.   He has entitled himself to receive therefor a certain sum, which is admitted to be justly due.   He has sought to enforce payment of this sum by an action against the guardian personally.   If the guardian should pay the amount, he would be entitled to reimbursement from his ward's estate.   The administrator of Mrs. North's estate has recognized the reasonableness of the guardian's agreement, and has adopted and confirmed it.   In the declaration upon the account annexed, he has given credit to the defendant for Mrs. North's board until her death. He now agrees that the full amount claimed by the defendant is a reasonable and proper charge to be made.   Under this state of things, drawing such inferences as might properly be drawn, the court might well find that the defendant agreed to treat the sum which should reasonably become due to him for care and maintenance before he should pay for the land as a payment towards the price of the land, and it might properly give credit accordingly upon the plaintiff's claim, and thus avoid the defence of the statute of limitations.

*Judgment for the plaintiff affirmed.*