NATHAN H. CROW AND MARY E. BYERS v. SARAH E. CONANT.

*Executors and administrators—Appointment of debtor of deceased —Payment—Mortgage.*

1. The application of the equitable doctrine that when a debtor is appointed executor of the will of his creditor, and accepts the trust, the debt is presumed to have been paid, and is treated as an asset in the executor's hands for the payment of debts and legacies, does not operate to discharge a lien by which the debt is secured; citing Woerner, Adm. § 512; *Kinney v. Ensign,* 18 Pick. 232; *Soverhill v. Suydam,* 59 N. Y. 140.

2. The assignee of a mortgage nominated the mortgagor as one of

his executors, who accepted the trust, and with his co-executors inventoried the mortgage, which was duly recorded, as a part of the assets of the estate, but made no mention of the accompanying note. He then sold the land on contract, representing it to be unincumbered, and received $700 of the purchase price, after which $700 was paid to defendant's attorney, and after the mortgage had been assigned to a legatee by the executors pursuant to an order of distribution, and before he was discharged as executor, Nichols received the balance due on the contract, and executed a warranty deed to the vendee, who conveyed the land by warranty deeds to his son and daughter. After the father's death the legatee commenced to foreclose the mortgage by advertisement, and the son and daughter filed a bill to enjoin the foreclosure proceedings. A decree was made applying the two $700 payments upon the mortgage, but holding the remainder of the mortgage debt a lien upon the land, and that the nomination of the mortgagor as executor did not operate to discharge the mortgage nor the lien on the land, but that the mortgage became an asset in the hands of the executors, to be inventoried and treated like other assets, and that the assignment was valid, and vested the ownership of the mortgage in the legatee. And in affirming the decree upon the sole appeal of the complainants, the Court hold:

*a*—That the fact that the note which the mortgage was given to secure, and which is referred to therein, was not mentioned in the inventory, is immaterial in this case; that its production by the defendant upon the hearing leads to the presumption that it was delivered to the testator by his assignor, was among the assets of his estate, and was, with the mortgage, transferred to the legatee; and as both securities were treated as assets belonging to the estate by the executors, by the probate court, and by the legatees, the legal title to both passed to the legatee by the assignment.

*b*—That the equity of redemption was owned by the mortgagor, and did not become an asset of the testator's estate by his appointment as executor, and acceptance; and that, whatever good morals may have required on his part upon the receipt of the money for the sale of this interest in the land, neither the estate nor the legatee acquired any interest in the money received after the estate was closed as to the legatee.

*c*—That the complainants have a complete remedy at law upon the mortgagor's warranty of title; and the fact that he has absconded, and left no property which can be seized to satisfy their damages, affords no ground of equitable relief against the legatee.

Appeal from Branch. (Loveridge, J.) Submitted on briefs January 21, 1892. Decided February 5, 1892.

Bill to enjoin statutory foreclosure. Complainants appeal. Decree affirmed. The facts are stated in the opinion.

*Charles N. Legg,* for complainants, contended:

1. The rule in England was that the appointment by the creditor of his debtor as his executor operated as an extinguishment of the debt, and, while this has never been the law of this country, the presumption of law is here that the debt becomes cash in his hands, to be accounted for as such; citing *Downs v. Fuller,* 2 Metc. 135; *Manufacturing Co. v. Story,* 5 Id. 313; *Inman v. Mead,* 97 Id. 310; *Peterson v. Farnum,* 121 Id. 476; *Tarbell v. Jewett,* 129 Id. 457; *Jacobs v. Morrow,* 21 Neb. 233; Woerner, Adm. §§ 311, 512.

2. The executor, Nichols, admits the debt, and his liability, by placing it upon the inventory of the estate. The order for distribution was for a gross sum in money; hence the assignment of the mortgage to the defendant conveyed nothing. If the executor does not choose to have the debt considered as cash, he should show his insolvency or inability to pay; citing Woerner, Adm. § 311; *McCarty v. Frazer,* 62 Mo. 263; *Eaton v. Walsh,* 42 Id. 272.

*John D. Shipman,* for defendant, contended:

1. The proposition advanced, that where a creditor appoints his debtor executor of his will the debt becomes cash in his hands, is not supported by the cases cited, when applied to the situation shown by the present record. *Downs v. Fuller,* 2 Metc. 135, *Inman v. Mead,* 97 Mass. 310, and *Peterson v. Farnum,* 121 Id. 476, touch no question in this case. No mortgage was involved in *Tarbell v. Jewett,* 129 Mass. 457, nor in *Jacobs v. Morrow,* 21 Neb. 233.

2. *Kinney v. Ensign,* 18 Pick. 232, and *Soverhill v. Suydam,* 59 N. Y. 140, are decisions directly in point for the defendant. The first case holds that, where the debt is secured by a mortgage, creditors and heirs may require the executor to account for it as assets, but they are not bound to do so, and if this is not done the mortgage will not be affected. The other case is instructive. There the executor was indebted to the testator, and the indebtedness was secured by a mortgage. The New

York statute makes the executor liable for his debt to the testator as so much money, and requires it to be included in the inventory. The question presented was whether the lien was discharged. Notwithstanding the statute, the court held the mortgage not affected by his appointment* and action as executor, and enforced the security. An examination of the decisions bearing on the subject, even where no lien or mortgage is involved, shows they are not harmonious. Wherever the rule has been enforced, the circumstances were exceptional, and resort to artificial rather than business presumptions became necessary to sustain it. But, under the facts shown in this case, I am unable to find one authority holding the mortgage would be discharged, or in any wise affected, by such a relation.

3. The mortgage was on record, and Crow was bound to take notice of it. If he allowed himself to be diverted from this duty by Nichols, he cannot charge upon any one else the consequence of his mistake. While Lewis, Little's assignee, took the mortgage burdened with the equities between the parties to it, this liability is limited to those existing at the time of the assignment, which was more than nine years before the alleged equities arose; citing *Russell v. Waite*, Walk. Ch. 31; *Dutton v. Ives*, 5 Mich. 515; *Nichols v. Lee*, 10 Id. 526; but he did not take it subject to an equity which a third party may have against the mortgagor; citing *Bloomer v. Henderson*, 8 Mich. 395; and I know of no authority holding testators' or intestates' legatees, devisees, or distributees insurers of the good behavior of administrators or executors when dealing with property not belonging to the estate.

4. The equity of redemption owned by Nichols in the mortgaged premises never belonged to Lewis, and was never an asset of his estate. Had the note been indorsed and transferred with the mortgage, so it could have been sued by Lewis *(Pease v. Warren*, 29 Mich. 11), this estate could not even have been subjected on execution to the payment of the debt (How. Stat. § 6147). To call the avails of or a lien upon such an estate "assets of the estate" is a waste of words. They were no more assets than they would have been had Nichols not been an executor. By no known process could anything arising out of them, whether in the shape of a mortgage or contract, have been made available by the estate for the payment of demands. No trust was charged upon anything coming out of the equity of redemption, so far as the estate is concerned. To carry out the ideas urged by the complainants to their logical conclusion, the estate would be compelled to forego its first lien or mortgage on the land, and accept in lieu of it a claim upon the

equity of redemption. If, by reason of his warranty or representations, Nichols owed Crow a duty, Crow only could enforce it; the estate could not, for it did not arise out of his business as executor. Only equities against the estate can be considered; citing *Gilkey v. Hamilton*, 22 Mich. 283.

5. So far as the defendant is concerned, the estate is closed. The decree of the probate court settled the amounts going to each legatee. She received and receipted for her share, and has no longer a claim upon the assets distributed to the others. To all intents, as to the mortgage in question, she occupies the position of a *bona fide* purchaser of it. She had a right to rely upon the probate record as determining what her rights were, and act accordingly; citing *Hall v. Grovier*, 25 Mich. 428.

6. The authority to determine what were assets of the estate is vested in the probate court, and this Court has no jurisdiction over the matter; citing *Holbrook v. Campau*, 22 Mich. 288; *Pitcher v. Douglas*, 37 Id. 339; *Loomis v. Armstrong*, 49 Id. 521.

7. Only the probate court could charge the executor with the Nichols debt, and make it an asset of the estate; but no court could compel the estate to take Nichols' personal promise to pay in place of the mortgage given to secure it. The matter is *res judicata*; citing *Potter v. Titcomb*, 7 Me. 302; *Clark v. Fredenburg*, 43 Mich. 263.

8. The decree of distribution is final, not only as to the defendant, but as to the rights of all parties interested in the estate. Except as to the $9,000 held as trustees, the executors were discharged from all liability in relation to the estate. Their trust and duty as executors ceased with the entry of that decree. But if only a partial discharge, it would still be a bar.

GRANT, J. The material facts in this case are these: October 25, 1875, one William Little, being the owner of the land involved in this controversy, deeded it to one Phineas P. Nichols, and Nichols at the same time gave to Little a purchase-money mortgage on the same land for $2,500. The mortgage was recorded October 28 of the same year, and on the same date was assigned by Little to Henry C. Lewis. This mortgage was held by Lewis until his death, in 1884. Mr. Lewis died testate,

naming Mr. Nichols and two others as the executors of his last will and testament. They accepted the trust, and duly qualified, September 29, 1884. This mortgage was inventoried among the assets of the estate, but the note was not mentioned, although it appears to have been produced by the defendant upon the hearing of this cause in the court below. June 8, 1885, the probate court made an order of distribution of the estate under the will of Mr. Lewis. By this order the mortgage in question was assigned to the defendant, who in 1890 instituted foreclosure proceedings by advertisement. This mortgage was a part of the full amount due her as legatee. She gave her receipt therefor to the executors, who filed the same in the probate court. The executors have not been absolutely discharged.

March 19, 1885, Nichols contracted to sell this land to Nathan Crow, the father of the complainants. Mr. Crow paid Nichols $700 at the execution of the contract. He subsequently paid the attorney for the defendant $700, and the balance was paid to Nichols on or before October 1, 1886, at which date Nichols executed to him a warranty deed. Complainants obtained their interest in the land by purchase from their father. Nichols represented to Nathan Crow that the land was unincumbered. Nichols up to that time had borne a good reputation, and Crow placed implicit confidence in his representations. A gross fraud was perpetrated upon him by Nichols, but of this neither Mr. Lewis nor the defendant nor the co-executors of Nichols had any knowledge. The points urged by complainants are these:

1. That the debt of the executor Nichols must be treated as cash in his hands, and as such accounted for by him.

2. That the land contract became in Nichols' hands a security, one of the assets of the estate, and belonged with the mortgage.

3. That payments made to Nichols both before and after the transfer of the mortgage to the defendant should be applied upon the mortgage.

This bill was filed to enjoin the foreclosure proceedings. The decree directed the two payments of $700 each to be applied upon the mortgage; that the remainder of said mortgage debt was a lien upon the land; and further held—

"That the nomination by said Henry C. Lewis, in his will, of Phineas P. Nichols, one of his executors, did not operate to discharge said mortgage nor the lien on the land, but that said mortgage became and was assets of the estate in the hands of said executors, to be inventoried and treated as other like assets of said estate; that the distribution and assignment of said mortgage to defendant was valid, and vested the ownership thereof in said defendant."

Complainants alone appeal.

In England it is the general rule that if a debtor is appointed executor of the will of his creditor, and accepts the trust, the debt is thereby released. But equity presumes the debt to have been paid, and treats it as an asset in the hands of the executor, for the payment of debts and legacies. In America this equitable rule prevails at law also, in the absence of statutory provisions. Woerner, Adm. § 311, and the authorities there cited. In many of the states the liability of executors and administrators, under such circumstances, is fixed by statute. The application of this equitable doctrine does not operate to discharge a lien by which the debt is secured. Woerner, Adm. § 512; *Kinney v. Ensign,* 18 Pick. 232; *Soverhill v. Suydam,* 59 N. Y. 140.

In *Kinney v. Ensign* the land had been twice mortgaged. The mortgagor was appointed administrator of the second mortgagee, and included in the inventory the debt due from himself. It was held that he had the

right to redeem as against the assignee of the prior
mortgage. Shaw, C. J., who delivered the opinion, said:

"The true and substantial ground is that the taking
of administration by the debtor is not in fact or in law,
to all purposes, payment of the debt. As between the
administrator himself and those beneficially interested in
the estate, he is held to account for it as a debt paid,
from convenience and necessity, because the administrator
cannot sue himself, and cannot collect his own debt in
any other mode than by crediting it in his administration
account. On technical grounds, as well as on considera-
tions of policy, an administrator is not permitted to
show that he could not collect a debt due from him-
self."

In the present class it is immaterial that the note
which the mortgage was given to secure, and which was
referred to in the mortgage, is not mentioned in the in-
ventory. Its production by the defendant upon the
hearing leads to the presumption that the note was
delivered to Lewis by Little, was among the assets of the
estate, and was, with the mortgage, transferred to the
defendant. The mortgage and note were treated as assets
belonging to the estate by the executors, by the probate
court, and by the legatees. Under these circumstances
the legal title to both, by the assignment of the execu-
tors, passed to the defendant.

At the time of the assignment to defendant there was
nothing upon record to indicate that complainants' father
had any legal or equitable defense to the mortgage, nor
to cause any suspicion that Nichols intended to defraud
him. If he had examined the record in the office of the
register of deeds before paying Mr. Nichols, he would
have found a record of this mortgage, and could easily
have protected himself from the fraud which Nichols was
practicing upon him. It would certainly be most inequi-
table to visit the consequences of his implicit confidence
in Nichols upon the defendant, whose legal right it was

to rely upon this record.    Granting that both parties are innocent, the complainants' grantor put it in the power of Nichols to commit the fraud, and, according to all the authorities, they must bear the consequences.

Nichols owned the equity of redemption.    This interest was entirely distinct from that of the mortgage.    A mortgagee acquires no interest in it except by foreclosure. It did not become an asset of the estate by the appointment of Nichols as executor, and his acceptance.    Whatever good morals may have required on the part of Nichols upon receipt of the money for the sale of this interest, neither the estate nor the defendant acquired any interest in the money received after the estate was closed as to the defendant.

Complainants have a complete remedy at law upon Mr. Nichols' warranty of title.    It affords no ground of equitable relief against the defendant that Nichols has absconded, and left no property which can be seized to satisfy complainants' damages.

Decree affirmed, with costs.

The other Justices concurred.