DAVID D. STEWART *vs*. ALBERT F. HURD.

Somerset.    Opinion January 25, 1911.

*Executors and Administrators.    Appointment of Mortgagor as Mortgagee's Legal Representative.    Effect.    Assets.*

The appointment of a mortgagor as executor of the mortgagee and his charging himself with the amount of the debt in his inventory and account, does not ipso facto discharge nor pay the note and mortgage.

The appointment of a mortgagor as the mortgagee's executor discharges or suspends right of action on the debt, since the executor cannot sue himself.

Since a mortgagor appointed as the mortgagee's executor cannot sue himself on the debt, it is regarded as prima facie assets in his hands as personal representative, and he is estopped to deny that fact.

A mortgagor's assignment of the debt as the mortgagee's executor to a legatee with the latter's consent was held valid, making title under foreclosure superior to title under a foreclosed subsequent mortgage.

On report.    Judgment for defendant.

Real action to recover a certain farm in St. Albans occupied by the defendant.    Plea, the general issue with brief statement as follows :    "And for brief statement of special matter of defence to be used under the general issue pleaded, and filed in said court with said plea, the 5th day of October, 1909, being the 13th day of said term, the Court in the exercise of its discretion, permitting the same to be filed at said time, the said defendant further says that he was not at the date of the writ in this case, tenant of the freehold, in the premises described in said writ, but was at the date of said writ and long before and ever since, in possession of the whole of the premises described in said writ, under George A. Nelson, who he avers, was at the date of said writ, and long before and ever since, the owner in fee of the same premises."    At the conclusion of the testimony the case was reported to the Law Court for determination.

The case is stated in the opinion.

*David D. Stewart*, for plaintiff.

*Daniel Lewis, and Merrill & Merrill*, for defendant.

SITTING : EMERY, C. J., SAVAGE, PEABODY, SPEAR, CORNISH, KING, JJ.

CORNISH, J. This is a real action brought to recover a farm in St. Albans, occupied by the defendant, and is reported to the Law Court for final decision. The plea is the general issue with a brief statement in which the defendant justifies as tenant "under George A. Nelson the owner in fee of the premises."

The history of the defendant's title is as follows :

On December 2, 1875, George L. Nelson, the father of George A. Nelson and the then owner, mortgaged the premises to his mother Lois Rollins to secure the payment of his note for $600, which mortgage was duly recorded January 1, 1877. Lois Rollins died November 4, 1904, testate, and at the time of her decease she still held this note and mortgage, only thirty-seven dollars having been paid thereon from time to time. Under this will Mary Jane Nelson, the wife of George L. Nelson was made sole devisee and legatee of all the real estate and personal property, "including notes and mortgages." George L. Nelson, the son and mortgagor, was nominated by the testatrix, and duly appointed by the Judge of Probate, Executor of the will of Lois Rollins, the mortgagee, on February 14, 1905, and entered upon the discharge of his duties.

On April 10, 1905, he filed an inventory of the estate comprising household furniture and furnishings at the appraisal value of $32.75 and "note of George L. Nelson for $600 dated December 2, 1875, secured by mortgage of same date, $1500," the appraisers certifying that the amount which could be realized from this item exclusive of expenses and risks of collection was in their judgment $1000." On October 5, 1905, the executor made this endorsement upon the note "paid by George L. Nelson, Exr. of last will and testament of Lois Rollins $185.15 by services and disbursements as executor aforesaid," and on the same day duly assigned the mortgage and endorsed the note as executor to Mary J. Nelson, the legatee under the will, and delivered them to her. On the second Tuesday of October, 1905, the executor filed his first and final account which was allowed on the second Tuesday of December, 1905. In this

account the executor charged himself with the amount of the inventory $1532.75 and was allowed the same amount for payments and charges. His charges embraced various small bills paid, his commissions at two per cent on the $1532.75 and this item "Mary Jane Nelson, devisee and legatee under the last will and testament of said Lois Rollins $1346.60," that being the balance of the note after deducting all expenses and charges. Mary Jane Nelson´ had possession of the premises from the time of the assignment to her and began foreclosure proceedings on March 26, 1906, the right of redemption expiring on March 26, 1909. On April 27, 1907, she assigned the note and mortgage to her son George A. Nelson, fore-closure not being waived, so that as the defendant claims, the title became perfected in George A. Nelson on March 26, 1909, under which title the defendant justifies as tenant. Such is the defend-ant's chain of title.

The plaintiff's claim is as follows: On July 29, 1889, George L. Nelson gave to the plaintiff a second mortgage on these premises to secure the sum of $320.08 which was recorded July 30, 1889. No payments having been made the plaintiff brought a writ of entry and recovered a conditional judgment at the September term of court, 1906, and was put in alleged technical possession by an officer under an alias execution on June 8, 1909. The defendant refusing to surrender actual possession this real action was brought to recover such possession.

The plaintiff claims under a second mortgage and while he does not contend that the first mortgage was in fact paid either to Lois Rollins in her lifetime or to the legatee Mary J. Nelson, and was thereby discharged, he urges that when George L. Nelson the original mortgagor qualified as executor of the will of Lois Rollins, the mortgagee, and charged himself with the amount of the mortgage debt as assets in his hands as executor, that operated ipso facto as a matter of law as a payment of the debt and a discharge of the mortgage securing the same; that the mortgage thereby became extinguished and, although remaining undischarged of record, was in law discharged and his second mortgage was then and there promoted to the first rank; that the only remedy of the

legatee was then against the executor and his sureties on the executor's bond, one of whom was her tenant, the defendant, and the other was herself. This raises an interesting question of law which has never been decided in this State.

By the English common law the appointment of a debtor as executor seems to have been held in some cases to be an extinguishment of the debt, the appointment being regarded in the light of a specific legacy of the debt to the debtor. *Wankford* v. *Wankford*, 1 Salk. 305. In that case Lord Holt said that it operated as a payment and release, as the same hand was to pay and receive the debt, which was therefore considered as actually paid and extinguished. But the rigor of this common law rule was relaxed in equity and under some circumstances in actions at law.

Thus it was held in *Caweth* v. *Phillips*, 1 Ld. Raym. 605, that where an obligor was appointed executor of the obligee, during the minority of another who was to become executor when he attained majority, the debt was not discharged.

In *Dorchester* v. *Webb*, Cro. Car. 373, the appointment was held not to release co-obligors on the bond.

In *Flud* v. *Rumcey*, Yelv. 160, it was held that the appointment of the debtor as executor did not discharge the debt as against creditors or legatees limited to be paid out of the debt. In *Byrn* v. *Godfrey*, 4 Ves. Jr. 5, the debt was held not to be discharged when the assets were insufficient to pay creditors. The debt was held not to be discharged in equity in *Carey* v. *Goodinge*, 3 Bro. Ch. 111, *Berry* v. *Usher*, 11 Ves. Jr. 88, and in Re Hyslop (1894) 3 Ch. 522.

The English doctrine was very carefully considered and the cases analyzed and reconciled in the early Massachusetts case of *Stevens* v. *Gaylord*, 11 Mass. 256, which is the leading case in this country and the one most frequently cited by the courts when this subject is under consideration. The doctrine of that case is the more logical and equitable one that neither in the case of testate nor intestate estates is the debt itself extinguished or released without payment, but the right of action is discharged or suspended because the executor or administrator cannot maintain an action against himself.

Because of this impossibility of action, the rule was adopted that such indebtedness should be regarded as prima facie assets in the hands of such executor or administrator. The rule of *Stevens* v. *Gaylord*, has become the Massachusetts doctrine as evidenced by a long line of decisions, many of which are cited by the learned plaintiff in his brief. *Winship* v. *Bass*, 12 Mass. 198; *Hobart* v. *Stone*, 10 Pick. 215; *Ipswich Manufacturing Co.* v. *Story*, 5 Met. 310; *Chenery* v. *Davis*, 16 Gray, 90; *Leland* v. *Felton*, 1 Allen, 534; *Tarbell* v. *Parker*, 101 Mass. 165; *Bassett* v. *Fidelity & Dep. Co.*, 184 Mass. 210. The same rule has been adopted in Maine, *Hodge* v. *Hodge*, 90 Maine, 509. To same effect are *Robinson Estate* v. *Hodgkin*, 99 Wis. 327, 74 N. W. 791; *Griffith* v. *Chew*, 8 Serg & R. 31. It is true that in some cases language has been used to the effect that the debt itself has been extinguished by the appointment of the debtor as executor or administrator but such is not a correct statement. As between the legal representative, who is also the debtor, and the creditors or those interested in the estate, the representative will not be permitted to say that his obligations form no part of the assets of the estate. Having voluntarily accepted the duties pertaining to an executor or administrator, he is estopped from treating his own indebtedness other than as an asset of the estate. "To allow him to accept the office and then to settle the amount which the creditors and others interested in the estate would have got had he not taken the office but had allowed some disinterested person to be appointed to enforce these rights, would not be doing justice to those whose rights the law undertakes to preserve." *Bassett* v. *Fidelity and Deposit Co.*, 184 Mass. supra, at page 212.

This last sentence suggests the reason for the rule, which is the preservation of the rights of those interested in the estate. Since there was no one having the legal capacity to sue a debt due from the executor or administrator, the rule was adopted from the very necessity of the case, in order to protect creditors, legatees and next of kin. For their security this equitable rule has been established which has sometimes been called a legal fiction. But it is an ancient legal maxim that "in fictione juris semper aequitas existit." This

fiction was created, if fiction it be, to protect the estate not to injure it, it was designed to work justice not injustice and to serve as a shield and not as a sword.

The question in the case at bar does not arise between the legal representative and the legatee. The executor is not attempting to avoid his liability either by failing to include his note and mortgage in the inventory or by refusing to treat them as assets belonging to the estate. On the contrary he embraced them in his inventory and account and acknowledged their validity by endorsing on the note as a partial payment the debts and expenses that he paid in behalf of the estate and his charges for administration and then duly endorsed and transferred the note and assigned the mortgage as a subsisting asset of the estate to the legatee to whom it was given under the will. The rule does not require that such indebtedness be treated as cash assets. To hold that would be to force a payment in money and to extinguish the note as a form of indebtedness. If the personal representative and those interested in the estate choose to treat the indebtedness as still existing in its original form, they have the power to so treat it. No one is injured thereby and therefore no one can complain. Just here lies the fallacy of the plaintiff's position. He contends that the appointment worked a constructive payment ipso facto, and that therefore the note ceased to exist, the mortgage securing it was discharged and his own second mortgage became the first. The plaintiff claims that not only was the debt extinguished but also the mortgage securing it. The rule should not and does not go so far. It should not, because its effect would be inequitable and unjust. This case furnishes a good example of such injustice. If the note and mortgage have been constructively paid and discharged, the legatee has received, not a note secured by a first mortgage as the testatrix intended, and as the executor received to be transmitted, but an unsecured claim against a party who was adjudged insolvent some years ago and who is financially worthless. But the plaintiff replies that the legatee's remedy is against the sureties on the executor's bond. In some cases the legatee may have and exercise that right, but she is not compelled to, to the exclusion of her original right. In this case

the remedy on the bond would be entirely inadequate because the legatee is herself one of the sureties, and in cases where the executor is not required to give bond, the suggested remedy would fail utterly.

It is the opinion of the court that the note and mortgage, though assets in the estate, were not paid either actually or constructively, and that their transfer by the executor to the legatee was valid, it being for the interest of the legatee to consider the indebtedness as existing in its original form. Authorities are not lacking to support this result.

In *Kinney* v. *Ensign*, 18 Pick. 232, land was twice mortgaged, the mortgagor was appointed administrator of the second mortgagee and returned an inventory in which the debt from himself was included, and brought a bill in equity to redeem from the first mortgagee. It was contended in defense that when the plaintiff mortgagor became administrator of the estate of his creditor, he became liable to account for this debt in the administration account, that the sureties on his bond would thereby become responsible for such debt and therefore the debt was to be considered as absolutely paid and extinguished and the mortgage thereby discharged.

The court sustained the bill and in the course of the opinion Chief Justice Shaw said : "But in equity this ground cannot be maintained. It may be remarked, in passing, that if these circumstances must be construed to amount to constructive payment, it would not necessarily follow, that the mortgage would be thereby absolutely discharged. Payment after condition broken does not of itself revest the mortgaged estate in the mortgagor. But the true and substantial ground is, that the taking of administration by the debtor, is not in fact or in law, to all purposes, payment of the debt ; as between the administrator himself, and those beneficially interested in the estate, he is held to account for it as a debt paid, from convenience and necessity, because the administrator cannot sue himself, and cannot collect his own debt in any other mode than by crediting it in his administration account. On technical grounds, as well as on considerations of policy, an administrator is not permitted to show, that he could not collect a debt due from himself. But this is in the nature of an estoppel ; and it is a well

settled rule of strict law, that although a party is bound by an estoppel, as of a fact proved or admitted, yet it shall not be taken as a substantial fact, from which other facts can be inferred. The holding of the fact of a debtor taking administration upon the estate of his creditor, to be a payment, may be deemed a legal fiction, adopted for purposes of justice and convenience, as well as from considerations of policy, and calculated generally to promote justice ; but such a legal fiction will never be allowed to go so far as to work wrong and injustice."

In *Pettee* v. *Peppard*, 120 Mass. 522, the grantee in a deed had assumed and agreed to pay as his own debt an outstanding mortgage to a third party, and afterwards was appointed executor of the mortgagee, included the mortgage among the assets of the estate, and assigned it for valuable consideration to the defendant in this suit. The plaintiff contended that the mortgage was thereby discharged as a matter of law, but the court declined to so hold, on the ground that there was no privity between the executor and the mortgagee, and added "The rule of constructive payment relied on, where it works substantial injustice will not be applied unless the case is brought strictly within it, as illustrated by the case of *Kinney* v. *Ensign*, 18 Pick. 232, where this court refused to apply it in favor of the purchaser of an equity of redemption." In *Pettee* v. *Peppard*, the attempt was made in order to let in a subsequent attaching creditor, in the case at bar, a subsequent mortgagee. Other cases to the effect that a lien given to secure a debt due from a personal representative to the testator or intestate is not discharged as against creditors, legatees, or next of kin are, *Chick* v. *Farr*, 31 S. C. 463, 10 S. E. 176 ; *Murray* v. *Luna*, 86 Tenn. 326, 6 S. W. 603 ; *Utterback* v. *Cooper*, 28 Gratt. 233 ; *Crow* v. *Conant*, 90 Mich. 247, 30 Am. St. Rep. 427, 51 N. W. 450. For a general discussion of the subject see note to *Wachsmuth* v. *Penn. Mut. Life Ins. Co.*, (241 Ill. 409) 26 L. R. A., N. S., pages 411-416, and note to *United Brethren First Church* v. *Akin*, (45 Oregon, 247) 2 Am. and Eng. Ann. Cas. 353.

In many of the States, as in New Hampshire, New York and Pennsylvania, the doctrine that the mere appointment of a legal

representative does not extinguish and discharge the debt itself but makes it assets in his hands, has been phrased in statutory form, but it is still the Massachusetts doctrine which was reached without a statute.  *Judge of Probate* v. *Sulloway*, 68 N. H. 511.  Under similar statutes it has been held that all liens by which the debt was secured remain in force until the executor or administrator in the performance of his trust has paid the amount of his debt and discharged it.  *Soverhill* v. *Suydam*, 59 N. Y. 140 ; *Anderson* v. *Anderson*, 183 Pa. St. 480, 38 At. 1007.  As the statutes were declaratory of the true equitable rule as generally accepted in this country, these decisions are directly in point.

It is unnecessary to multiply authorities further.  The doctrine which we adopt commends itself by the force of its own logic and equity.  It preserves the rights of all parties in interest, brings hardship to none, and a rule that is followed by such results is usually a safe rule to follow.

Our attention has not been called to nor have we been able to find a direct authority for the plaintiff's claim in this case, the extinguishment of the mortgage security by operation of law.  It is true that in some of the cases cited in the plaintiff's brief, broad and general expressions to that effect may here and there be found but the cases themselves do not warrant them, and they are clearly distinguishable in the facts from the case at bar.

In *Ipswich Mfg. Co.* v. *Story*, 5 Met. 310, the executor entered the debt in his inventory but not the mortgage, charged himself with it in his first account, and with the balance in a second account and assented to a decree in which it was ordered to be distributed as money.  "When thus actually treated as assets and distributed as such it is of course a legal satisfaction and extinguishment of the debt and in legal effect, payment."  But the court in that case was very careful to recognize and approve of the doctrine of *Kinney* v. *Ensign*, 18 Pick. 232, supra, and added, page 315, "We do not question the authority of the administrator, duly qualified, to assign and transfer a bond and mortgage ; and we cannot perceive that it would make any difference, that it happened to be his own debt."

In *Leland* v. *Fulton,* 1 Allen, 531, the question of mortgage security was not involved, and again the doctrine of *Kinney* v. *Ensign,* is affirmed as fully recognizing the principles of the earlier cases as to the right of those interested in the estate, to charge the executor in his administration account for a debt due from him to his testator while it further holds "that they would not, under the circumstances of that case make it compulsory that the same should be charged in the account as payment, where the debt was secured by a mortgage which would thereby be discharged."

In *Tarbell* v. *Parker,* 101 Mass. 165, the court held that the note and mortgage had been so treated by the parties that they must be considered paid, but the right of the parties in interest to have treated them as a valid and subsisting security and their transfer as such were clearly recognized and stated in the opinion.

*Martin* v. *Smith,* 124 Mass. 111, simply decided that a bequest of a mortgagee's interest in land is a bequest of personal property and does not pass such title to the mortgaged land as will enable one to defend against a writ of entry. The opinion states that when the executor charged himself with the amount of the mortgaged note as assets in his hands, "this operated as payment of the note and discharged the mortgage." This statement was in the nature of dictum and was broader than the authorities warrant.

In the other cases cited in the plaintiff's learned and exhaustive brief the question of mortgage security was not involved.

Our conclusion therefore is that the transfer of the note and mortgage by the executor to the legatee was valid, and the plaintiff's title under the second mortgage is inferior to that of the defendant under the first.

*Judgment for defendant.*