Manser, J.
On exceptions to decree of the Supreme Court of Probate affirming the decree of the Judge of Probate in Sagadahoc: County.
*304 The matter under consideration by the Judge of Probate was the final account of Harry F. Morse as administrator of the estate of Charles W. Morse. By the decree the administrator was found chargeable with assets as of the date of the death of decedent of the value of $9,755.21. The administrator was allowed for sundry payments $1,080.52', but was not allowed for items charged by him for services, or for fees of counsel. To the balance of the net estate, the Judge of Probate added interest at six per cent from the date of the appointment of the administrator to the date of the decree, so that the total sum with which the administrator was found chargeable was $11,887.22. The administrator took no appeal from this decision.
The United States of America, hereinafter designated as the Government, filed an appeal claiming that it was a judgment creditor of the estate, and was aggrieved by the decision.
The situation, so far as can be ascertained from the confused and jumbled record presented to the court, is as follows: In 1920 Charles W. Morse became surety on a bond given to the United States Emergency Fleet Corporation, which later became the basis of liability to the Government. In September, 1926, Harry F. Morse was appointed guardian of his father, Charles W. Morse, who had become non compos. When the guardian was appointed, the ward had no assets of his own, but under the will of his wife, Clemence C. Morse, who had recently died, was entitled during his lifetime to the income upon the residue of her estate after provision for bequests and annuities. The inventory filed in the estate of Clemence C. Morse showed personal assets of but $18,309.00. In July, 1927, Jennie R. Morse, a sister of Charles W. Morse, died and later in that year, equity proceedings were commenced, to recover assets held by the administrators of the Jennie R. Morse estate assertedly belonging to the estate of Clemence C. Morse. After a considerable time, an adjustment was made, as a result of which the Clemence C. Morse estate received additional assets. On settlement of her estate, the Probate Court on October 6, 1931 made an order of distribution, under which Charles W. Morse became entitled to the income for life on the residue, amounting to $175,918.00.
Aside from the income from the Clemence C. Morse trust fund, the guardian of Charles W. Morse received from the estate of *305 Charles H. Morse, by order of distribution dated July 5, 1932, assets appraised at $14,610.00.
Charles W. Morse died January 12, 1933. Harry F. Morse, his former guardian, was appointed administrator of his estate, and qualified May 2,1933.
Harry F. Morse, as guardian, did not file any inventory until April 11,1933. It appears that the assets included therein were the securities received from the Charles H. Morse estate.
On June 13, 1933, the Probate Court allowed the first and final account of Harry F. Morse, as guardian. This account showed the assets mentioned above, the income thereon, and amounts paid out which appear to be for certain expenses incurred on behalf of the ward during the year 1932 and until his death in January, 1933. They aggregate $1,943.00 and the balance of $13,079.00 was turned over by Harry F. Morse, as guardian, to himself as administrator of the estate of Charles W. Morse.
It is thus apparent that the guardian did not account for any income received from the Clemence C. Morse trust fund.
A few months after the appointment of Harry F. Morse as administrator, he filed an inventory showing the same securities which were turned over from the Charles H. Morse estate, and received by him as guardian, and appraised at the same values. On October 14, 1933, the Government filed a claim against the estate in the amount of $52,149.00.
It does not appear from the record that during the lifetime of Charles W. Morse, his guardian knew that the Government was a creditor of his ward, or that he had been apprised of the fact when he settled his guardian’s account.
No further action was taken by the Government to prosecute its claim against the estate until August 5,1937, more than four years after the administrator qualified. It. S., Chap. 101, Sec. 15, provides that actions not commenced within twenty months after the qualification of the administrator, are barred. The administrator evidently assumed that the claim of the Government could not be enforced because of this statutory bar. Such limitation, however, does not have application against the Government. The case of U. S. v. Summerlin, 310 U. S., 414, 60 S. Ct., Rep. 1019, is decisive upon that point. Judgment was entered in the District Court for the *306 Government on February 9,1939, for rising $52,000.00. On March 11,1939, the administrator filed an amended account in the Probate Court, supplementing one filed August 1,1935, which had not been acted upon. The original account showed an intended distribution to the four children of the decedent of the residue of the estate. The amended account corrected the values placed upon the securities and added a charge for administrator’s commission of $450.00 and for legal services and disbursements of $3,000.00. The corrections in asset values were allowed but the additional charges were disallowed.
It must be borne in mind that it is the account of the administrator which is under attack. The gist of the complaint made by the Government is that the guardian of Charles W. Morse must have received for some period during the lifetime of the latter, income on approximately $176,000.00 at least, as to which there was no accounting by the guardian in the Probate Court. Without any procedure to compel a true accounting by the guardian, the Government insists that the administrator should be found liable on settlement of his account for breach of duty to collect from the guardian sums received by him.
In defense upon the facts, the administrator asserts as a general statement that all income received from the Clemence C. Morse trust fund had been expended for the maintenance, support, comfort and convenience of his father, Charles W. Morse, during his lifetime, and that there was nothing left to be turned over from the guardian to the administrator. He testified that he filed his original account as administrator upon the assumption that there was no valid claim outstanding on the part of the Government, and that the heirs, being the only persons interested in the estate of his father, were satisfied that there was no unused income left from the trust fund.
The Judge of Probate made a finding in effect that the administrator was not chargeable in his account with sums received by the guardian and not accounted for, and based his finding upon the ground that there was “no evidence to show that these sums (representing unused income) were ever in his possession after his appointment as administrator.” The account was then allowed, with the deductions already noted. On appeal, the case was submitted upon the record of the hearing in the Probate Court, and the decree of the Judge of Probate was affirmed without opinion.
*307 The Judge of Probate evidently relied upon a literal construction of R. S., Chap. 76, Sec. 56, which reads:
“Every executor and administrator is chargeable in his account with all goods, chattels, rights and credits of the deceased, which come to Ms hands and are by law to be administered, whether included in the inventory or not” ;
The real question is whether the administrator is chargeable in his probate account with assets which it is claimed were received by a former guardian of the decedent, who had failed to include such assets in his account, and after such account had been settled in the Probate Court. Under the decree approving the account, the guardian was found chargeable only with the sum Avhich he turned over to the administrator. With that decree in full force and effect,, would the administrator have the right to sue the guardian (assuming they were separate persons) and undertake to procure a judgment in a common-law court in face, and in spite of that decree? Instead, would he not be obliged to have the guardian cited into the Probate Court for a full and complete accounting of his steAvardship ?
It is for the Probate Court by proper proceedings to require the guardian to present a true account showing receipts and disbursements in behalf of his ward, Avhen it is called to the attention of the Judge of Probate that there may be funds for which the guardian has failed to account. His decision would then be perpetuated by a Avritten decree which would annul, modify or confirm the former action. The sum Avith which the guardian is finally charged, it would then be the duty of the administrator to collect, and if he failed to do so, both the guardian and the administrator Avould be liable upon their official bonds. If this is not so, we should be confronted Avith the anomalous situation that the Probate Court, in the settlement of the account of the administrator, charged him with a devastavit for failure to collect assets from the guardian which, under the decree allowing the guardian’s account, did not exist.
The principles which govern this situation are clearly distinguishable from those enunciated by many authorities, including our OAvn court in Hodge v. Hodge, 90 Me., 505, 38 A., 535, and Stewart v. Hurd, 107 Me., 457, 78 A., 838, and which in effect hold that *308 when a person is appointed as the executor or administrator of an estate, who is himself debtor to the estate, the debt is not extinguished and such personal representative must account for the same as assets in his hands. In this case the administrator, as an individual, was not indebted to the estate. If there were funds which were in the hands of the guardian of the decedent, disclosed or adjudicated, it would be the duty of the administrator to collect and account for them.
The point here is that the amount due from the guardian to the estate must be judicially determined in the regular and proper way by proceedings in the Probate Court provided for that very purpose. So long as the decree of the Judge of Probate stands, showing that there is nothing unaccounted for by the guardian, such decision cannot be attacked in an entirely separate proceeding in the same court in the endeavor to charge the administrator with a devastavit because he failed to account for assets now alleged to have been in the hands of the guardian.
Counsel for the Government cite Graffam v. Ray, 91 Me., 236, 39 A., 569, as decisive on the point that the Probate Court, as here, is the proper forum for the litigation of a devastavit issue. In that case, the executor of a will failed to collect certain choses in action existing, in favor of the testator, and permitted them to become barred by the statute of limitations. Suit was brought by a residuary legatee in an action at common law and for his own use. It was held that,
“The Probate Court has exclusive jurisdiction, subject to appeal to the Supreme Court of Probate, of the estates of decedents, and their final settlement and distribution, including the settlement of the accounts of the personal representative. If a devastavit exists, it is the duty of that court to compel the executor to account for the amount lost to the estate by his fault. . . . The Probate Court is invested with ample power in these respects.
“Notwithstanding the resignation of the executor, he can still be cited into the Probate Court, and required to account for the matters claimed, if liable therefore. Robinson v. Ring, 72 Maine, 143. It can only be done in that court. Potter v. Cum *309 mings, 18 Maine, 58; Judge of Probate v. Quimby, 89 Maine, 576.”
In the cited case, the question involved was the failure of the executor to collect assets. There is no disagreement with the principle that the procedure must properly be in the Probate Court, or that it has exclusive jurisdiction to compel a proper accounting, but the accounting in reality complained of here is that of the guardian, and until there has been appropriate action to alter the decree of the Probate Court in that respect, the issue cannot be tried out upon the administrator’s account.
It is also urged that the case of Mann v. Baker, 142 N. C., 235, 55 S. E., 102, is a close parallel to the situation at bar, in that the second administrator failed to collect sums which came into the hands of the previous administrator, and was charged with his failure to effect this collection. That case, however, shows that the amount which the second administrator failed to collect was the proceeds of real estate of the intestate sold by the first administrator wider decree of court and which sum appeared in his recorded return to the court. Thus it becomes apparent that the original administrator stood charged by the Probate Court with a definite sum, which it was the duty of the second administrator to collect. Here the Probate Court has determined what sum should be turned over by the guardian to the administrator, that sum has been received by the administrator and accounted for by him, and the account of the guardian stands unattacked and unreversed.
It is a well-established rule that a ward cannot maintain an action against his guardian, respecting matters of his estate, until there has been a final accounting by the guardian, and the balance due has been determined in the Probate Court. Hopkins v. Erskine, 118 Me., 276, 107 A., 829; Thorndike v. Hinckley, 155 Mass., 263, 29 N. E., 579; 28 C. J., Guardian and Ward, p. 1245; 25 Am. Jur., Guardian and Ward, p. 98. In Murray v. Wood, 144 Mass., 195, 10 N. E., 822, 824, the court held that,
“until the amount has been determined in the Probate Court, an action cannot be maintained, either at law or in equity, in the name of the ward against a former guardian.to recover what is due on a settlement. As this amount had not been determined in *310 the Probate Court, and as no suit had been brought and no judgment obtained upon the bond, the plaintiff had, when she presented her claim, no provable debt against the estate in insolvency.”
So in McLane v. Curran, 133 Mass., 531, it was held that a guardian cannot, during the existence of that relation, maintain an action against his ward for necessaries furnished to him, even if the guardian has no property of the ward in his possession, and the court further pointed out that,
“But even if the guardianship has come to an end, until at least an account has been settled in the Probate Court, and it has there been found that something is due from the ward, no such action can be maintained. The accounts between them are to be adjusted with all the facilities there offered for convenient settlement, and they are each to be held to the responsibilities growing out of the relation in which they have been placed by the action of that tribunal. It is for their mutual protection that this should be so, and that, before any rights are sought to be enforced elsewhere, the extent of such rights should be there determined. No action can be brought against a guardian by his late ward, to charge him in an action for money had and received. It is necessary for the protection of the guardian to hold that the remedy of the ward is by proper proceedings in the Probate Court, and thereafter by action on the probate bond.”
So in Cobb v. Kempton, 154 Mass., 266, 28 N. E., 264, 265, it was held that a cause of action against a guardian for failure to account for money received by him as guardian, does not come into existence until there has been a decree of the Probate Court upon the account of the guardian, determining the sum due. The court said:
“This particular cause of action for failure to pay over a definite amount found due on the settlement of the account came into existence after the decree allowing the account. Until then the guardian was not liable to an action for the money.”
If the ward is bound to seek his remedy in the Probate Court for an accounting by his guardian, the administrator of a deceased *311 ward, as his personal representative, is vested with no greater rights.
It might be claimed that the instant case presented a distinction, upon the contention that the administrator, having succeeded himself as guardian, knew that as such guardian he had not made a proper accounting, and therefore cannot defend a charge of devastavit, but the only logical and proper way, open to all parties in interest, is first to take the proper steps to show that the guardian is actually accountable to the estate for assets remaining in his hands, notwithstanding his approved account of record. The dereliction, if any, is thus traced to its source, the probate account of each fiduciary is subject to correction, the liabilities of all responsible parties, including the sureties on both official bonds, are thereby fixed and determined.
While the administrator is not chargeable with a devastavit until it has been finally determined by proper Probate Court procedure that the guardian failed to account for assets in his hands, the court below was not justified in allowing the account of the administrator when it was brought to its attention that there might be other assets found to be due to the estate upon a true accounting by the guardian. The account of the administrator should have been held open, pending the judicial determination of that question upon proper proceedings in the Probate Court against the guardian. For this reason, the exceptions must be sustained as to the allowance of the administrator’s account, and the case remanded to the Probate Court for appropriate action.

So ordered.